THE STATE OF OHIO, APPELLEE, *v.* WALKER, APPELLANT.

(No. 49118 — Decided June 17, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*James R. Willis,* for appellant.

KRUPANSKY, J. On February 8, 1984, Alfreda Walker (appellant) stabbed her common-law husband, Walter Walker, in the left chest with a kitchen knife. The blade penetrated eight inches into the victim's chest, piercing his heart and entering his lung. There were no witnesses to this fatal stabbing.

On March 12, 1984, the appellant was indicted for the murder of Walter Walker in violation of R.C. 2903.02.[1] Appellant waived her right to a trial by jury and trial commenced on June 11, 1984 before a judge. On June 13, 1984 the court found appellant guilty of the lesser included offense of voluntary manslaughter.[2]

The prosecution established that appellant, a registered nurse, called the Emergency Medical Squad at 12:30 a.m. on February 9, 1984 to request medical treatment for the victim. When the police arrived the appellant explained she had stabbed Walter Walker. A police officer testified appellant indicated the victim had pointed a shotgun at her but appellant later maintained "they misunderstood me, I said that he had done it in the past." A .22 caliber rifle was found in an unstairs bedroom under a bed. No shotgun was discovered until approximately one month later when the appellant's son reported he found a shotgun under a couch in appellant's home. A police officer testified to having observed the area where the shotgun was later uncovered but his inspection failed to reveal any weapon on February 9, 1984.

Appellant testified to a fifteen-year stormy relationship with the victim. The two were married, divorced and at the time of the incident they were living together in appellant's home. Appellant stated the victim was a good, caring and jolly man when sober but was an alcoholic and often drunk. When drunk, he became aggressive, pugnacious and irrational. Throughout the course of their relationship he had repeatedly beaten her and had pointed guns at her on at least two occasions. Other testimony revealed instances where the appellant had committed acts of physical violence against the victim after becoming angered with him.

On the night of the stabbing, appellant arrived home from a church meeting at approximately 11:00 p.m. She was despondent over the recent death of a close friend and concerned about the well-being of her son who was stationed overseas with the United States Army. She sat at her dining room table holding her head in her hands. The victim approached and questioned why she was sitting in this manner. She replied that it would do no good to explain her feelings to him when he had been drinking.[3] Angered, the victim began slapping her about the head. After knocking her out of the chair,[4] the victim allegedly stated, "If you don't talk to me, I am going to get something and make you talk to me."

---

[1] R.C. 2903.02 provides:

"(A) No person shall purposely cause the death of another.

"(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code."

[2] R.C. 2903.03 provides:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.

"(B) Whoever violates this section is guilty of voluntary manslaughter, a felony of the first degree."

[3] The autopsy revealed a blood alcohol content of .17. Expert testimony established this level is a stage at which the individual is appreciably under the influence of alcohol.

[4] Only one police officer could remember seeing a dining room chair overturned.

While the appellant remained on the floor the victim went upstairs and started back down the stairs. The appellant looked up and saw the victim descending the stairs with his right arm down at his side. She thought he was concealing a rifle. She ran into the kitchen and grabbed the first available object, *viz.*, a kitchen knife. The appellant swung the knife at the victim who she said lunged at her and the victim then collapsed on the floor.

For its part, the prosecution established there was no shotgun found at the scene. The area where the shotgun was eventually found on April 5, 1984, approximately two months later, was behind the couch approximately thirteen feet from where the victim fell; there was no blood between the two areas. The investigating officers testified the house did not show evidence of a struggle. There was medical evidence of two superficial cuts on the victim's left cheek and right hand. Finally, there was evidence describing the appellant's history of violence toward the victim.

Appellant assigns two errors: the first assignment is as follows:

"The trial court abused its discretion when it summarily found the defendant guilty without articulating any of his essential findings on the record."

This assignment is without merit.

Crim. R. 23(C) states in full:

"In a case tried without a jury the court shall make a general finding."

The record reveals the case *sub judice* was tried without a jury because appellant made a knowing, intelligent and voluntary waiver of her right to a jury trial. The general verdict rendered by the trial court was in keeping with the express directive of Crim. R. 23(C).

Appellant contends in her brief Fed. R. Crim. P. 23(c) requires specific findings by the trial court judge. Fed. R. Crim. P. 23(c) states as follows:

"In a case tried without a jury the court shall make a general finding and shall in addition, *on request* * * * find the facts specially. * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein." (Emphasis added.)

Thus, Fed. R. Crim. P. 23(c) requires specific findings only when requested. In the case *sub judice* appellant made no such request nor is there any provision for such request in our rules. The Ohio Criminal Rules are patterned after the Federal Rules of Criminal Procedure. When drafting the Ohio Rules the draftsmen, no doubt, considered the Federal Rules. Therefore, the specific omission of the request for special findings must be considered intentional.

Although not assigned as error, appellant suggests a violation of due process in her brief but offers no reason for her assertion specific findings are an essential element of due process. In light of both the Ohio and Federal rule this court holds specific findings by the trial court were not required in the case *sub judice*. The general finding of the trial court was not violative of due process.

Appellant's second assignment of error is as follows:

"The guilty verdict here is against the manifest weight of the evidence and is contrary to law."

When faced with an allegation of insufficient evidence to support a guilty verdict a reviewing court must examine the record at trial to determine whether evidence was presented "which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State* v. *Walker* (1978), 55 Ohio St. 2d 208 [9 O.O.3d 152]; *Atkins* v. *State* (1926), 115 Ohio St. 542. Such an examination involves the weighing of the evidence developed at trial. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351].

Appellant contends the evidence supports a finding of self-defense and not voluntary manslaughter. Paragraph

two of the syllabus of *State* v. *Robbins* (1979), 58 Ohio St. 2d 74 [12 O.O.3d 84], states:

"To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. (*State* v. *Melchior,* 56 Ohio St. 2d 15 [10 O.O.3d 8], approved and followed.)"

In support of her theory of self-defense appellant testified on direct examination she saw the victim approach her with "something immediate under his arms." Later, on cross-examination the appellant stated she could not recall seeing any weapon on the night of the stabbing. Appellant failed to present sufficient evidence of a bona fide belief of imminent danger of death or great bodily harm. Nor did she establish that her only means of escape was the use of the knife.

Moreover, the physical evidence on the victim's body did not comport with the testimony offered by appellant. Appellant stated she "swung" the knife at the victim as he "lunged at her." The victim had two superficial cuts as well as the gaping wound in the chest. Such superficial wounds are not consistent with the testimony describing one swing of the knife in an act of self-defense.

The prosecution offered testimony of two important prior incidents. In 1975 the appellant shot the victim with a .22 caliber handgun. The appellant admitted to this shooting but claimed to have aided in transporting the victim to the hospital. The victim's niece, an eyewitness to the shooting, testified the appellant shot the victim as the two stood talking. After firing the shot the appellant said, " 'don't come home' [a]nd got in her car and drove away." In 1982 the appellant assaulted the victim after he became verbally abusive at a family gathering. A witness testified the appellant knocked the victim's glasses off and his false teeth out as she delivered several blows.

R.C. 2903.03(A) sets forth the elements of voluntary manslaughter:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

In the case *sub judice* the evidence showed the appellant and victim to have been involved in a turbulent relationship punctuated by acts of violence against each other. These acts were reciprocal and both combatants were capable of disabling the other. In spite of the victim's physique, *viz.,* six feet three inches, two hundred thirty-seven pounds, the appellant was not at a disadvantage when the victim was in an inebriated condition. The court below considered appellant's version of the events on the evening in question and weighed that against the other testimony and physical evidence presented at trial. As the trier of fact the trial court judge determined the credibility of the witnesses and the weight to be given the evidence. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. The trial record discloses a substantial amount of evidence establishing the elements of voluntary manslaughter beyond a reasonable doubt. This court cannot disturb the verdict. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340].

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and PRYATEL, J., concur.