OPINION
Defendant-appellant, Kenneth Barnett, appeals his convictions in the City of Hamilton Municipal Court for drug abuse and drug paraphernalia, in violation of the Codified Ordinances of the City of Hamilton, Sections 513.03 and 513.12, respectively. Appellant was fined $150 plus costs and sentenced to thirty days in jail. The jail time was suspended and appellant was given two years of reporting probation.
Appellant and three roommates were tenants of 833 Main Street, in the City of Hamilton, Butler County, Ohio. On or about September 6, 1997, the property owner, Sandra Kopp (Kopp) served the occupants with eviction notices. On the afternoon of September 9, 1997, at the request of his mother, Kopp, Doug Zeek (Zeek), a police officer for the City of Hamilton, arrived at 833 Main Street to forcibly evict appellant. At the time, Zeek was off duty and dressed in street clothes, but nevertheless had his duty gun with him. Zeek and appellant's versions of the events that followed are incongruous.
Zeek testified that he knocked on the door of 833 Main Street and identified himself as Kopp's son and a City of Hamilton Police Officer. "At that point he [appellant] opened the door and motioned. I came in." Zeek testified that "the place smelled like marijuana." Zeek testified that when he told appellant to leave the premises, appellant repeatedly refused, stating "he had no where to go." When Zeek went into the kitchen to call for a marked unit, he watched as appellant walked into the living room and over to an ashtray by the couch. Zeek testified that appellant either stepped on or kicked the ashtray under the couch. Zeek also testified that appellant then "took something, a tin and put it underneath the cushion." When Zeek requested that appellant return to the kitchen to wait for the other police officers, appellant responded "fuck you," and ran downstairs into the basement. In testimony, Zeek admitted that he drew his gun, stood at the top of the stairs, and requested that appellant come back upstairs. When appellant reached the top of the stairs, Zeek grabbed appellant's belt, put him against the wall, holstered his [Zeek's] gun, and searched appellant. During the search, Zeek testified that appellant began to struggle and squirm. Zeek then wrestled appellant to the floor, handcuffed his wrists, and placed him under arrest for criminal trespass.
Appellant testified that upon hearing a knock at the door, he "opened it approximately two inches and it came flying open." Appellant testified that Zeek then pushed his way into the house. Contrary to Zeek's testimony, appellant testified that when Zeek told him to get out, he refused to leave without first packing his belongings. Appellant stated that as he began to walk away from Zeek:
 he caught up to me from behind and grabbed me by the hair and pushed me into the wall. He told me to get my hands up * * * and he put the muzzle of his gun into my back. * * * He started to kick my legs. * * * He reached around and got me in a head lock. Jerked me up off the ground about three times. Spun me around and I landed on my back on the floor. Had pinned my right arm beneath me. * * * [H]e began punching me in the back of the head. He hit me approximately six or seven times. * * * He told me to remain on the floor. As far as I knew, he still had his gun. I was terribly upset. He told me if I moved or said a word he would shoot me.
When the other police officers arrived, appellant was taken to the squad car. Zeek and another officer searched the property. Zeek recovered a hemostat and part of a hand-rolled marijuana cigarette in the ashtray. Under the couch cushion, in a tin cookie canister, Zeek discovered a baggie containing 2.13 grams of marijuana, rolling papers, a scale, and another hemostat. The canister also contained two video rental cards bearing appellant's name.
At trial, appellant presented evidence that in addition to himself, his roommates used the living room as a common area. Furthermore, appellant's roommates testified that they still had personal belongings in the house at the time of his arrest.
In addition to the original charge of criminal trespass, appellant was subsequently charged with: (1) drug abuse, (2) drug paraphernalia, and (3) resisting arrest. A bench trial took place on October 9, 1997. Prior to trial, the prosecutor indicated that he did not wish to prosecute the charge of criminal trespass and a Nolle Prosequi was entered. The record also reveals that no pretrial motion to suppress the evidence seized by Zeek was filed by appellant's counsel.
After the presentation of evidence, the trial court found that "since he was a tenant" appellant had "the legal right to be at the house" and therefore, was not trespassing. Additionally, because Zeek admitted that he initially arrested appellant only for criminal trespass, and the court found appellant was not trespassing, the court found appellant "Not Guilty of Resisting Arrest." The court then stated:
 Officer Zeek was invited into the house by the defendant and Officer Zeek's discovery of the contents of the cookie canister and the roach and hemostat on the floor was legal. The Court would also point out that the introduction of all of this evidence was done without objection of Defense Counsel. All of the exhibits were introduced without objection of Defense Counsel. Defense Counsel also had opportunity to file a Motion to Suppress but saw fit not to do so. Therefore, this Court finds defendant Guilty of Drug Abuse and Possession of Drug Paraphernalia.
The trial court sentenced appellant as detailed above. Appellant appeals, raising three assignments of error.
In his first assignment of error appellant contends:
 THE TRIAL COURT ERRED IN ADMITTING EVIDENCE SEIZED AS A RESULT OF AN INVALID ARREST.
Appellant contends that because he was found not guilty of the only charge for which he was originally arrested (i.e., criminal trespass), and the only justification for the search in which the incriminating evidence was seized, the trial court erred in admitting such evidence at trial. Essentially, appellant makes a Fourth Amendment argument and urges this court to find that the incriminating evidence was improperly admitted.
We wish to note at the outset that we do not condone the warrantless seizure of evidence absent a lawful arrest, exigent circumstances, consent from the accused, or the discovery of evidence in plain view. However, due to certain procedural defects in this case, we cannot find that the trial court erred in admitting the seized evidence.
Crim.R. 12(B) addresses the timing and necessity of filing pretrial motions. Specifically, the rule provides:
 "[t]he following must be raised before trial: * * * (3) Motions to suppress evidence, * * *." Crim.R. 12(G) then provides that "[f]ailure by the defendant * * * to make requests which must be made prior to trial, * * * shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver." (Emphasis added.)
While considering the question of whether a criminal defendant has complied with the requirements of Crim.R. 12, the Ohio Supreme Court has stated, "* * * Constitutional rights may be lost as finally as any others by a failure to assert them at the proper time." State v. Wade (1978), 53 Ohio St.2d 182, 190, (citations omitted). "Absent a pretrial motion to suppress, objections to evidence on constitutional grounds are deemed waived. See Crim.R. (B)(3) and (G)." State v. Savage (1980),1 Ohio App.3d 13, 15.
Therefore, if a defendant never avails himself of a pretrial motion to suppress illegally obtained evidence as required by Crim.R. 12(B)(3), absent a showing of good cause the defendant's objection is deemed waived. Id., accord, State v. Higgins (1976),50 Ohio App.2d 389, 389. The rationale behind this steadfast rule is twofold: (1) to provide the prosecutor notice of the evidence upon which the prosecutor may rely in preparing a case, and (2) to provide the trial court notice of what evidence is likely to cause judicial concern at trial. Additionally, Ohio courts have stated:
 [t]he state has a right of appeal from adverse rulings upon motions to suppress under Crim.R. 12(J) and that is the reason why there is waiver, absent a pretrial motion to suppress under Crim.R. 12(B)(3). Savage at 15.
Thus, in light of the foregoing case law, and the fact that appellant's counsel did not file a motion to suppress evidence seized prior to trial, this court need not consider whether the trial court improperly admitted evidence seized as the result of an invalid arrest.
At the close of the prosecution's case, when the prosecutor moved to admit the exhibits into evidence, appellant's counsel's failure to file a motion to suppress was addressed.[1]
Appellant's counsel responded that "no motion to suppress was filed because he had a criminal trespass, which we knew to be blatantly illegal. Therefore, we felt that once he established that the criminal trespass was illegal everything else would have fallen." This court disagrees. The very fact that appellant's counsel knew the criminal trespass arrest was "blatantly illegal," should have provided him with ample incentive to file the pretrial motion to suppress the seized evidence.
Additionally, this court fails to find "good cause" to overlook such waiver. "The `good cause' required by Crim.R. 12(G) to obtain relief from waiver must be such as to show that the defendant had a `good excuse' for sleeping on his rights in failing to file pretrial motions." Higgins at 390. In the case sub judice, appellant has not offered "good cause" to either the trial court or this court on appeal. Accordingly, appellant's first assignment of error is overruled.
In his second and third assignments of error, appellant contends:
 THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF GUILT [sic] ON THE CHARGES OF DRUG ABUSE AND POSSESSION OF DRUG PARAPHERNALIA BECAUSE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILT ON THE ELEMENT OF CONSTRUCTIVE POSSESSION.
 THE JUDGMENT OF GUILT [sic] OF DRUG ABUSE AND POSSESSION OF DRUG PARAPHERNALIA WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In its brief, the prosecution asserts that "in his second and third assignments of error, appellant essentially contends that his convictions are contrary to the manifest weight of the evidence." The prosecution errs in combining appellant's assignments of error under one legal standard as "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
The proper standard of review for a sufficiency of the evidence claim was articulated in the second paragraph of the syllabus in State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.
Thus, it is a test of "whether the state has met its burden of production at trial." Thompkins at 390, (Cook J., concurring).
However, the standard of review for a manifest weight of the evidence claim is broader than the standard used in reviewing a sufficiency claim. Id. at 387. When considering a manifest weight of the evidence claim an "appellate court sits as the `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. (Citations omitted.) When determining whether a criminal conviction is against the manifest weight of evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way. Id. (Citations omitted.) Rather than a test of whether the state has met its burden of production, manifest weight of the evidence claims turn on "whether the state has appropriately carried its burden of persuasion." Id. at 390, (Cook J., concurring; emphasis added).
Turning our attention now to appellant's sufficiency claim, appellant contends that because the common area in which the incriminating evidence was seized was utilized not only by appellant but by all of the tenants, the prosecution failed to produce evidence sufficient to support appellant's convictions for drug abuse[2] and possession of drug paraphernalia.[3]
The Revised Code contains two definitions of what it means to "possess." The first is found in R.C. 2901.21(C)(1) which provides:
 Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession. (Emphasis added.)
R.C. 2925.01(K) provides a definition within the drug offense context:
 "Possess" or "possession" means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. (Emphasis added).
Additionally, case law has established that possession may be actual or constructive. See State v. Haynes (1971), 25 Ohio St.2d 264. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical control." State v. Wolery (1976), 46 Ohio St.2d 316, 329. Further, constructive possession "requires a showing of conscious possession" or at least, a discussion that appellant "had knowledge that the subject property was on the premises." State v. Hankerson (1982),70 Ohio St.2d 87, 91. Thus, utilizing these definitions:
 ownership of a "controlled substance" is not a required element of the offense of drug abuse. Rather "control" over the "controlled substances" is the key element of the offense. While mere access to contraband through * * * occupation of the premises upon which it is found is insufficient to establish possession, constructive possession may be established where the accused is able to exercise dominion and control over the contraband. * * * Thus, readily usable drugs in close proximity of an accused may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession. State v. Payne (Oct. 20, 1994), Cuyahoga App. No. 66214, unreported, at 12-14 (citations omitted).
After a thorough review of the record, this court finds sufficient evidence to sustain the trial court's determination that appellant had constructive possession of the drugs and drug paraphernalia. Zeek testified that while he was in the house he watched appellant either step on, or kick, an ashtray from which the remains of a marijuana cigarette were subsequently seized. Zeek also testified he saw the appellant take "something, a tin and put it underneath the cushion."
Given the evidence, we find the prosecution met its burden of production sufficiently enough to establish that appellant was consciously aware of, and exercised control over, the drugs and drug paraphernalia seized. Consequently, appellant had "constructive possession" of these items, and the trial court did not err in finding appellant guilty of drug abuse and possession of drug paraphernalia. Accordingly, appellant's second assignment of error is overruled.
Finally, we turn to appellant's contention that his convictions were against the manifest weight of the evidence. Under this assignment of error, appellant contends that because the trial court rejected portions of Zeek's testimony with respect to appellant's alleged trespass and resist of arrest, all of Zeek's testimony should have been rejected. Without Zeek's testimony, appellant contends that his convictions for drug abuse and possession of drug paraphernalia are against the manifest weight of the evidence. We find appellant's argument without merit.
It is axiomatic that in a bench trial the trial judge acts as the trier of fact. The Court below heard testimony about the events of September 9, 1997 from Zeek, and weighed that testimony against appellant's version of the events. In doing so, the trial judge determined the credibility of witnesses and the weight to be given the evidence. See State v. Walker (1985), 26 Ohio App.3d 29,32, certiorari denied (1987), 480 U.S. 916, 107 S.Ct. 1369, citing State v. Dehass (1967), 10 Ohio St.2d 230. After considering the evidence, the trial court concluded: "[d]efendant's testimony * * * is not believable and is rejected by this court."
Therefore, following a thorough review of the record by this court, we cannot find appellant's convictions against the manifest weight of the evidence. The prosecution met its burden of persuasion and presented evidence which could persuade a finder of fact to find appellant guilty of drug abuse and possession of drug paraphernalia. First, Zeek testified that immediately upon entering the residence he smelled marijuana. Second, there was evidence presented that while Zeek was in the house he watched as appellant attempted to conceal the ashtray from which the remains of the marijuana cigarette was subsequently seized. Furthermore, Zeek testified that he observed appellant attempt to hide the tin cookie canister that contained the bulk of the incriminating evidence, thereby exercising control and establishing constructive possession. This evidence, coupled with the trial court's rejection of appellant's testimony as not credible, clearly supports the trial court's guilty finding with respect to these two charges. This court will not substitute its judgment for that of the fact finder. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, J., concurs.
KOEHLER, J., dissents.
[1] The record does reveal that at this point, appellant's counsel asked to approach the bench, but because the record does not contain the colloquy, this court has no way of knowing whether there was an objection to the admission of evidence. At the close of trial, the prosecutor again moved to admit the exhibits into evidence. At that point, appellant's counsel did lodge an objection. However, given the compelling reasons for requiring objections to the admission of such evidence to be filed prior to trial, we find this late objection insufficient to raise the admission of seized evidence to the level of error.
[2] Drug abuse is defined in Section 513.03(a) of the Codified Ordinances of the City of Hamilton, which is identical to R.C.2925.11(A). Both provide:
 No person shall knowingly obtain, possess or use a controlled substance.
[3] Drug paraphernalia is defined in Section 513.12(b) of the Codified Ordinances of the City of Hamilton. Section 513.12 of the Ordinance is analogous to R.C. 2925.14. The Ordinance provides:
 No person shall use or possess with the intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this chapter.