Defendant-appellant, Raymond Carrozza, appeals his convictions in the Eaton Municipal Court on three misdemeanor charges. We reverse two convictions and affirm one.
Appellant, the former chief of police for the Village of Gratis, was charged with dereliction of duty in violation of R.C.2921.44(E), a misdemeanor of the second degree (Count One); compounding a crime in violation of R.C. 2921.21(A), a misdemeanor of the first degree (Count Two); obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree (Count Three); and attempted falsification in violation of R.C. 2923.02 and 2921.13(A)(7), a misdemeanor of the second degree (Count Four).
Following a bench trial, appellant was found guilty on Counts One, Two, and Three, and not guilty on Count Four. He was sentenced to suspended terms of imprisonment and fines. Appellant was also placed on probation for five years, during which time appellant was not permitted to serve in any law enforcement capacity.
On appeal, appellant asserts that on all three counts on which he was convicted, "the trial court erred in finding appellant guilty as the evidence beyond a reasonable doubt does not support a finding of guilty." This court interprets his assignments of error as claims challenging the weight and sufficiency of the evidence to support his convictions.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The grounds for acquittal are strongest where the state entirely fails to produce any evidence to support an essential element of the charge. State v. Kline (1983), 1 Ohio App.3d 208.
The standard of review for manifest weight of the evidence claims is whether the State has "appropriately carried its burden of persuasion." State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In a bench trial, the trial judge acts as the trier of fact and determines both the credibility of the evidence and the weight of the evidence. State v. Walker (1985), 26 Ohio App.3d 29, 32. It is not the function of an appellate court to substitute its judgment for that of the fact finder. State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 BACKGROUND FACTS
The three charges stemmed from unrelated incidents. During the relevant time period, appellant was the Chief of Police of the Village of Gratis. This was a part-time position which appellant held in addition to operating his own business. Appellant was appointed chief in December 1995 and resigned his position in January 1997.
Mayor Ron Kolonis ("Mayor Kolonis") presided over the Mayor's Court of Gratis during the relevant time period. Mayor Kolonis assumed office on January 1, 1996 and had no prior experience as a public servant. He attended Mayor's Court training and began conducting court in April 1996. Mayor Kolonis testified that he relied on appellant for legal advice and that appellant acted as "the presenter of facts" in his court.
 COUNT ONE — DERELICTION OF DUTY
A truck driver appeared in Mayor's Court on October 3, 1996, and was concerned that his speeding ticket would cost him his job. Mayor Kolonis testified that he was sympathetic, but said "I just can't make the thing go away." Appellant then advised Mayor Kolonis that the uniform traffic ticket could be voided and the charge rewritten on a minor misdemeanor form and assured Mayor Kolonis that such an action was legal. The issuing officer also testified that he agreed to allow the ticket to be rewritten on a minor misdemeanor form after appellant assured him that such a change was legal.
Appellant admitted that he had told Mayor Kolonis that the officer could void and rewrite his ticket. Appellant also testified that, to his knowledge, such a disposition was legal. He recalled that an attorney had told him such a change was legal on a first time DUI charge. Appellant testified that police officers have discretion to change their tickets, and that judges have discretion in assessing points. Appellant acknowledged, however, that the tickets were "supposed to go to the BMV." Carrie Forrer, the Mayor's Court clerk, identified documents showing that the ticket had been dismissed and that a minor misdemeanor had been disposed of by a guilty plea and payment of a fine. Forrer also testified that several months later appellant had referred to this incident and had said "something to the effect that it was illegal * * * what we had done."
Appellant was charged with dereliction of duty under R.C.2921.44(E) which provides:
 No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to his office or recklessly do any act expressly forbidden by law with respect to his office.
The relevant facts are undisputed. The prosecutor argued that appellant had advised Mayor Kolonis to do something which was illegal. To make her case, the prosecutor relied on two Ohio Uniform Traffic Rules, specifically traffic Rules 3(C) and 15(A) and (B). Traffic Rule 3(C) provides in part that:
 The Ohio Uniform Traffic Ticket shall be used in all moving traffic cases, but its use for parking and equipment violation is optional in each local jurisdiction.
Traffic Rule 15 provides:
 (A) Failure to apply rules. Any willful failure to apply these rules, including the failure to amend or rescind inconsistent local court rules or the continued participation in practices expressly forbidden in these rules, by a judge, clerk or other personnel may be considered a contempt of the Supreme Court and may be punished as such. Proceedings in contempt under this rule can be instituted only with leave of the Supreme Court.
 (B) Improper disposition of ticket. Any person who disposes of a ticket, or who solicits or knowingly aids in the disposition of a ticket in any manner other than that authorized by these rules may be proceeded against for criminal contempt in the manner provided by law.
The trial court found appellant guilty of dereliction of duty because he was "instrumental in changing a traffic citation which was prohibited by the traffic rules."
Although appellant was instrumental in changing a traffic citation, and could perhaps be cited for contempt by leave of the Supreme Court, we do not find that his actions rose to the level of reckless dereliction of a duty expressly imposed on him (or expressly forbidden) "by law with respect to his office." R.C.2901.22(C) provides that:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
In order to have had the required mens rea, appellant must therefore have known of an express duty of his office and then failed to fulfill it. Although there was testimony that appellant later commented that the change in ticket was illegal, this does not establish recklessness at the time of the alleged offense. Appellant testified that an attorney had advised him that such a change was legal. Appellant advised Mayor Kolonis that a change in ticket form could be made. Mayor Kolonis himself testified that he subsequently heard opinions going both ways as to the legality of this action. The Fifth District Court of Appeals has held that a charging affidavit may in certain circumstances be used to prosecute a traffic offense in lieu of the Uniform Traffic Ticket. State v. Bogadi (1982), 5 Ohio App.3d 124.
However, even if the actions of the mayor and the clerk were illegal, appellant's conviction can only be sustained if appellant recklessly failed to perform a duty expressly imposed by law with respect to his office. The Traffic Rules in question do not expressly require a village chief of police to do or refrain from doing anything with respect to his office. A chief of police does have certain express duties. R.C. 737.15 provides that each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the council. The marshal has an express duty to suppress riots, disturbances, and breaches of the peace. R.C. 737.19(C). More specifically, in relation to Mayor's Court, the chief of police has a duty pursuant to R.C. 1905.08 to attend (or send a designate) the sittings of the Mayor's Court, "to execute the orders and process of the court, and to preserve order in it." However, the parties have not cited nor has our research revealed any duty on the chief of police to provide correct legal advice to the Mayor. Indeed, such a duty could arguably contravene rules against the unauthorized practice of law. Appellant may well have violated an implied duty to know of and assure compliance with the applicable Traffic Rules, however dereliction of an express, not an implied, duty is required for a conviction under R.C. 2921.44(E).
In State v. Gaul (1997), 117 Ohio App.3d 839, the Eighth District Court of Appeals reversed the conviction of the Cuyahoga County treasurer because the statutes in question did not "expressly require the treasurer to do anything." The court held that implied fiduciary duties were insufficient for a criminal prosecution although they could provide the basis for civil liability.
Without evidence going to recklessness and dereliction of an express duty, the state failed to produce evidence on two essential elements for a conviction. See State v. Kline (1983),1 Ohio App.3d 208. Therefore, appellant's first assignment of error is sustained. As to Count One, the judgment of the trial court is reversed and appellant is discharged.
 COUNT TWO — COMPOUNDING A CRIME
On Count Two, appellant was charged with compounding a crime in violation of R.C. 2821.21(A). Raymond Marcum ("Marcum") was charged in mayor's court with menacing, a fourth degree misdemeanor punishable by up to thirty days in jail and a fine of up to $250. R.C. 2929.21(B)(4) and (C)(4).
The evidence surrounding the disposition of this charge is in some dispute. Marcum testified that at his first appearance appellant called him into the hall to discuss his case. Marcum testified that appellant told him that "this is a misdemeanor fine and a hundred dollars would take care of it." Marcum then questioned appellant: "You mean if I give you a hundred dollars you'd take care of it, and he said yes. In essence." During his account, Marcum used the word "fine" on several occasions. However, Marcum also testified that appellant had said, "Give me a hundred dollars. I'll take care of it." Marcum stated: "I took it as a bribe."
Marcum's wife, who had been present with her husband that evening, also testified for the prosecution. She stated:
 [appellant] had uh * * * told my husband, that he could * * * if he was just to pay him a hundred dollars he would forget about it and that um * * * that all he had to pay was the court cost and I could do that by cleaning the court room.
Appellant testified that he asked Marcum "if he wanted to take the menacing down to a disorderly conduct fine, which is a minor misdemeanor and it was a hundred dollar fine." Appellant testified that he told Marcum that he and his wife could "work it off" cleaning the courtroom, but that Marcum did not want to do that. Following a continuance, for reasons unrelated to this appeal, the mayor dismissed Marcum's menacing charge.
R.C. 2921.21(A), compounding a crime, provides as follows:
 No person shall knowingly demand, accept, or agree to accept anything of value in consideration of abandoning or agreeing to abandon a pending criminal prosecution.
Marcum's testimony initially indicated that he understood that appellant was discussing a fine when appellant spoke to him regarding the payment of one hundred dollars. However, he later indicated that appellant used the phrase "Give me a hundred dollars. I'll take care of it." Additionally, Marcum's wife's testimony supported the prosecution in that she indicated a request for the money to be paid personally. We cannot find that there was insufficient evidence on all the elements of the crime. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Mrs. Marcum's testimony especially indicated appellant had personally requested payment of $100 to "take care of it." The prosecution did not need to present direct evidence of an express agreement. See, e.g., State v. Masten (Oct. 24, 1985), Cuyahoga Co. App. Nos. 49327, 49328, unreported (direct evidence of express agreement unnecessary in bribery charge).
There was sufficient evidence, if believed, to support appellant's conviction for compounding a crime. Although the question is a close one, we also cannot find appellant's conviction on this charge to be against the manifest weight of the evidence. Mrs. Marcum's testimony supported the trial court's guilty finding with respect to this charge, and this court will not substitute its judgment for that of the fact finder. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Accordingly, appellant's second assignment of error is overruled.
 COUNT THREE — OBSTRUCTING OFFICIAL BUSINESS
In Count Three, the evidence was again largely undisputed. On June 4, 1996, Jeffrey Troth ["Troth"] and his brother, Timothy, were arrested at a ballfield. Troth initially resisted requests to voluntarily come to the police station on a bench warrant. When appellant ordered Troth arrested, a struggle ensued and appellant was shoved. At least one other officer received a bruise during the incident. Both brothers were then maced by officers, handcuffed, and transported to the police station.
Kim Warrick ("Warrick") was the Chief of the Gratis Emergency Squad. Warrick was not on duty that evening, but responded to a pager announcement of a run. At the police station, she "observed a patient or prisoner on our cot in the back of our ambulance. Handcuffed twice with his hands behind his back * * * being treated there by three other members of our squad." She observed that the police officers in the vicinity were agitated. Warrick stated that she checked the patient and saw that he was being treated. Warrick then announced that Troth was going to be taken to the hospital because he was complaining of rib and chest pain, had been maced, and wanted to go to the hospital.
Warrick testified that appellant was agitated and said that "he [Troth] was his [appellant's] prisoner and he was not letting [Troth] go." Warrick insisted that Troth be taken to the hospital and appellant then threatened to "arrest her too." Warrick testified that she told appellant that she would call the sheriff's department if she had to. Appellant went into his office and, upon his return, announced that he had made a call "to a higher authority," and that "they had said it was his prisoner and he didn't have to let him go." However, Warrick testified that appellant then "changed his mind and let him go to the hospital." She testified that the ambulance was delayed by appellant's actions for approximately twenty-five minutes.
Appellant testified that he had been struck in the chest by Jeffrey Troth during the struggle to arrest him. He testified that when he learned that Troth wanted to be taken to the hospital he replied:
 I would too if I was under arrest and just had a fight with a police officer and assaulted a policeman. And I said, "Is he hurt?" Nobody knew if he was hurt and he'd just complaining and wanting to go to the hospital.
(Emphasis added.)
Appellant acknowledged he had a responsibility, because the prisoner was in his custody, to ensure that the prisoner received treatment if he was hurt. Appellant testified, however, that in his judgment Troth was not hurt because the police had done "nothing to hurt him except grab his arms and mace him and then put his arms behind his back and cuff him." Appellant also testified that he called Captain Terry Snowden for advice on the proper procedure. He testified that the ambulance left five minutes later. Appellant admitted that he had been upset that evening and that he and Warrick had an argument. Appellant denied threatening Warrick and no evidence was presented indicating that appellant was informed that Troth was complaining of rib or chest pain.
R.C. 2921.31 31(A) provides:
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
Warrick was not actually on duty that evening and was not the squad member who was treating or transporting the prisoner. Nevertheless, we do not find this to be dispositive. It is undisputed that Warrick asserted her authority as squad chief. Appellant then asserted his authority as police chief and delayed the performance of Warrick's lawful duty. However, we find that this delay was not "without privilege." Privilege is broadly defined as an "immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).
In finding appellant guilty on this charge, the trial court simply stated that Warrick was a public official and that appellant did "hamper or impede her in carrying out the performance of her office." The court did not address the privilege issue although it had been argued.
Appellant's position as chief of police undoubtedly provided him with a "status, position, office, or relationship" which gave rise to an implied privilege to reasonably dispute the squad chief's assertion of authority over his prisoner. The acts of a police officer are presumed to have been performed in his official capacity until the contrary is made to appear. Lyons v. City of Cincinnati (1936), 55 Ohio App. 458. The actions of a public officer within the limits of his jurisdiction are presumed to be in good faith. Zalud Oldsmobile v. Tracy (1996), 77 Ohio St.3d 74. A law enforcement officer having custody of an arrestee stands in a special relation to that person. Clemets v. Heston (1985), 20 Ohio App.3d 132. While that relationship exists, the officer has a duty to exercise reasonable care under the circumstances. Id. R.C. 2921.31 is only violated if appellant was without privilege to assert his authority over his prisoner.
In reviewing convictions under this statute, appellate courts have been careful to examine both the activity by the public official which is allegedly obstructed and the asserted privilege of the accused. Our research has revealed no case directly on point concerning two public officials. Most cases arise when a private citizen obstructs a police officer or another public official. Conduct which has been found not to violate R.C.2921.31 has included (1) warning of an upcoming speed trap if the vehicles were not speeding before the warning, Warrensville Hts. v. Watson (1976), 50 Ohio App.2d 21; (2) refusing to sign an agreement to pay a fine, Hamilton v. Hamm (1986), 33 Ohio App.3d 175; and (3) fleeing from a Terry stop, State v. Gillenwater (Mar. 27, 1998), Highland Co. No. 97-CA-0935, unreported. As with a citizen's asserted First or Fourth Amendment privileges, appellant's privilege as the official having lawful custody of the prisoner was not unlimited. However, the delay which appellant admittedly caused did not have any adverse consequences and Warrick was eventually able to fulfill her duty. We therefore find that appellant's privilege was not abrogated.
We further find that the absence of privilege was an essential element of this charge and that there was a concomitant failure of proof on that element. Therefore, appellant's assignment of error as to Count Three is sustained, appellant's conviction on Count Three is reversed and appellant is discharged.
Judgment affirmed in part and reversed in part.
KOEHLER and WALSH, JJ., concur.