DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a trial to the court, entered judgment for appellee, Charles Vaughan d.b.a. Charlie's Carpentry. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} The following facts are relevant to this appeal. On February 26, 2002, appellee filed a complaint for a balance due for renovation and construction in 1998 at 2712 Victory Avenue ("Victory project"). Appellant, MKM of Toledo, Ltd., ("MKM") filed an answer and a counterclaim; appellant, Old Republic Insurance Company ("Old Republic"),[1] filed an answer. The case proceeded to trial to the court on May 28, 2003.
 {¶ 3} The following evidence was presented. The first witness, John Morava, the owner of MKM, was called as on cross-examination. He identified a copy of a mechanic's lien filed against the property by appellee in December 1998 in the amount of $31,937.98. Morava admitted that appellee had worked for him in 1995 and again in late 1996 and early 1997; that he received written proposals for this prior work during each phase of the work; and that Morava knew appellee went over budget on one of these prior projects. Morava identified an invoice that he received from appellee dated November 16, 1998, requesting payment of a balance due of $33,120.24 for the Victory project. Morava admitted that appellee provided documentation of his costs and expenditures.
 {¶ 4} Appellee testified that he has been in business as Charlie's Carpentry, a sole proprietorship, for 15 years doing commercial and residential remodeling and new construction. He testified that he had done prior remodeling for Morava at his residence as well as at MKM; that the prior remodeling jobs went over budget; that the budget overruns were due to Morava asking for more work than originally planned; and that the prior bills were paid in full when submitted. Appellee testified that he met with Morava at the Victory project site to discuss the job which involved demolition and renovation; that Morava wanted the work to start as soon as possible; that he and Morava discussed a figure of $5,000 to rehab just the office section on that day; that this figure was not based upon measurements, checking of blueprints or checking of costs for materials; and that the demolition started within a day or two of their meeting.
 {¶ 5} After demolition began, appellee testified that Morava wanted an addition and then there were discussions about raising the roof. Appellee testified that he did not discuss costs of the addition with Morava when he asked for the addition although appellee did testify that he gave Morava an estimate of $3,000 to raise the roof. Appellee also testified that the estimates "just represented eyeball guesses."
 {¶ 6} Appellee testified that when the crew began raising the roof using pipes and jacks, the foreman and crew felt it was unsafe to proceed that way; that he informed Morava another method, using a forklift, was necessary; that Morava made no comments about this; and that there was no discussion about any additional cost as a result of this change. Appellee further testified that Morava made other changes such as siding on the gable ends. Appellee testified that he did not have ongoing discussions with Morava regarding costs; that there was only a written agreement for $5,000 on the front part of the project; that appellee expected to get paid as in the past; that when presented with the final invoice, Morava was upset that the project had gone over budget; and that appellee had provided Morava with his employees' time cards and cancelled checks for materials.
 {¶ 7} On cross-examination, appellee admitted that generally he tried to figure the costs of a job ahead so there are no surprises at the end but testified that Morava asked him to do the Victory project on the spur of the moment. Appellee admitted that he was not on the job site all day, every day; that his employees did not have a time clock on the job site; and that he relied on what his employees wrote on their time cards. Appellee also admitted that he did not keep contemporaneous records of his time spent on the Victory project site; that he had as many as three or four jobs going on at the same time and that he divided his time among those jobs; and that he ultimately billed MKM by looking at his employee records, figuring out how much time he must have spent on the job and multiplying that number by $40 per hour. Appellee also admitted that he had not discussed that $40 per hour charge on this job with Morava but testified that was their past experience. Appellee admitted that he was paid $14,850 toward the bill; that he never had a written agreement with MKM or Morava about how billing would occur or how much the Victory project would be; and that there was no one with personal knowledge of the terms of this deal except for appellee and Morava.
 {¶ 8} On re-direct, appellee testified that normally he reviewed blueprints before making a project bid but with the Victory project, he looked at the site and gave an estimate. When questioned by the court, appellee testified that he and his employees were on the Victory project for over a month; that he initially thought he would raise the roof with jacks because it would be the most economical way; and that the costs on the job increased because Morava added other aspects to the Victory project. The court also inquired about whether Morava asked about the costs to raise the roof and appellee testified that Morava asked "approximately' and appellee told him $3,000; appellee admitted it turned out be to $5,000.
 {¶ 9} Todd Hanf, a supervisor for Charlie's Carpentry, testified that one of his responsibilities is to review the time slips submitted by the employees. If he finds a discrepancy, he questions the employee, corrects the discrepancy and then submits the time slips to the company secretary, Barbara Vaughan.
 {¶ 10} Barbara Vaughan, appellee's wife, testified that she is an unpaid employee for Charlie's Carpentry, doing paper work such as submitting invoices and proposals for customers and the payroll to the accountant. She identified the invoice submitted on the Victory project which was compiled from the employee time sheets and receipts from suppliers. On the Victory project, she testified that there were 825 regular hours billed at $30 and 37 overtime employee hours billed at $45 per hour. She testified that $30 per hour was standard for most carpentry businesses at the time of the Victory project. The $30 per hour included employee wages, worker's compensation, liability insurance, the company's portion of FICA taxes, Bureau of Unemployment, union dues and health and welfare benefits. She also testified that MKM was billed $11,000 for appellee's work on the Victory project, $1,000 per week for 11 weeks. She testified that the charges for materials were $10.555.24 for a total of $47,970.24. Appellee rested.
 {¶ 11} MKM called Jeff Morin, a building contractor, who testified that he has been in the construction business for 26 years; that he has constructed 44 buildings, including the initial Victory building; that he inspected the improvements to the Victory project done by appellee; and that his estimate of the cost of the improvements to the Victory project would be $19,000 for both labor and materials. Morin testified that based upon his experience, $19,000 would be a fair and reasonable price accepted in the industry.
 {¶ 12} On cross-examination, Morin admitted that the $19,000 estimate was made just a few months before the trial. Morin also admitted that he did not include in the $19,000 estimate the costs for a permit, taking out the old windows, the installation of new windows or the trimming out of the windows, the purchasing and installing exterior service doors or the flooring or installation of a tile floor. Morin also admitted that he was not aware of the condition of the Victory project before appellee began the renovation.
 {¶ 13} Morava testified that he and appellee never discussed doing the Victory project on a "cost plus" basis; never discussed doing the Victory project on a labor and materials charge; and never discussed either a $40 per hour or a $1,000 per week charge for appellee's managerial duties. Morava testified that there was a price for the job. Morava also testified that the total contract price was $18,000, of which he has paid $14,850 plus $5,000 for materials. Morava also testified that he believed the balance owed to be $3,100.
 {¶ 14} The parties submitted written closing arguments in June 2003. On July 24, 2003, the trial court entered judgment for appellee in the amount of $36,470.24, based upon on the theories of quantum meruit and unjust enrichment. The trial court did not award appellee the amount sought, finding that the evidence did not support the hours sought for both appellee and his employees. Appellants filed a timely notice of appeal and set forth the following assignment of error:
 {¶ 15} "The judgment of the court below was against the manifest weight of the evidence."
 {¶ 16} In their assignment of error, appellants argue that the judgment was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
 {¶ 17} Judgments supported by competent, credible evidence going to all material elements of a case must not be reversed, as against the manifest weight of the evidence.
 {¶ 18} Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, in considering whether the judgment is against the manifest weight of the evidence, it is important that this court be guided by a presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. The trial court serves as the trier of fact in a bench trial and must judge the credibility of the witnesses and the weight of the evidence. State v. Walker (1985),26 Ohio App.3d 29, 32. "The trial court is entitled to make its own determination as to the weight of the evidence and, more important, credibility of the witnesses because it is in the best position to observe the witnesses' gestures and voice inflections." Rogers v. Hill (1998), 124 Ohio App.3d 468, 470.
 {¶ 19} The purpose of quantum meruit is to prevent unjust enrichment. Quantum meruit is "generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of the services rendered."Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 55. Quantum meruit, a contract implied in law, is not really a contract at all but an obligation created by law without regard to words of assent and is imposed to prevent a party from retaining benefits which in justice or equity belong to another.Legros v. Tarr (1989), 44 Ohio St.3d 1, 7-8.
 {¶ 20} The party seeking to recover under a theory of quasi-contract must prove that the benefit was not conferred upon the defendant gratuitously, Lucas v. Costantini (1983),13 Ohio App.3d 367, 369, and that the defendant was unjustly enriched, i.e., received something of value at the expense of the plaintiff, Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335. An action in quantum meruit involves the application of equitable principles to the facts and circumstances. Natl. City Bank v.Fleming (1981), 2 Ohio App.3d 50, 57-58. The amount which a party can recover under the theory of quantum meruit is subject to a double limitation: "(1) plaintiff cannot recover more than the actual value of the services rendered for defendant, including the value of materials and fair profit if and when applicable; and (2) plaintiff cannot recover more than the amount defendant was enriched by his rendering of services." Sonkin Melena Co., L.P.A. v. Zaransky (1992), 83 Ohio App.3d 169, 176.
 {¶ 21} Competent, credible evidence exists in this case to support the trial court's decision. The evidence presented was that appellee and between three and eleven employees per day worked on the Victory project for eleven weeks; that a supervisor verified the employee time cards; that there were 825 regular and 37 overtime employee hours worked on the Victory project; that employees were paid $30 per regular and $45 per overtime hour; that the $30 per hour was standard for most carpentry businesses at the time of the Victory project; and that the project materials totaled $10,555.24. Appellee argued that the total for time and materials was $47,970.24.
 {¶ 22} However, a witness for MKM estimated that the cost for both labor and materials for the improvements to the Victory project would be $19,000. On cross-examination, this witness did admit that he had not included in his estimate the costs for several aspects of the Victory project.
 {¶ 23} Based upon the evidence, the trial court determined that the number of hours for both appellee and his employees should be reduced. The trial court ultimately awarded appellee $36,470.24 less any payments already made. Upon a careful review of the record, this court concludes that the trial court's judgment was not against the manifest weight of the evidence.
 {¶ 24} Accordingly, appellants' assignment of error is found not well taken.
 {¶ 25} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Richard W. Knepper, J., Mark L.Pietrykowski, J. Concur.
[1] Old Republic executed a surety bond in regard to appellee's claim against MKM.