[Cite as *State v. Arnold*, 2016-Ohio-7047.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103626**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# KATHLEEN A. ARNOLD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-593792-A

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 29, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Paul Kuzmins
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Zachary M. Humphrey
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Kathleen A. Arnold ("Arnold"), appeals her burglary conviction and raises the following two assignments of error:

1. The appellant's conviction for burglary is not supported by sufficient evidence where the state failed to present evidence that it was objectively likely that a person was going to be present at the time of the offense.

2. Appellant's conviction for burglary is against the manifest weight of the evidence.

**{¶2}** We find no merit to the appeal and affirm.

## I. Facts and Procedural History

**{¶3}** Arnold was charged with one count of second-degree felony burglary, in violation of R.C. 2911.12(A)(2), and one count of petty theft, in violation of R.C. 2913.02(A)(1). At a bench trial, one of the victims, Margaret Toaz ("Margaret"), testified that there had been two thefts in her home prior to the theft involved in this case. She explained that her husband, Todd Toaz ("Todd"), operated an excavating business from the couple's basement and that money had previously been stolen from his home office.

**{¶4}** The first theft occurred on or about December 21, 2014. Todd testified that he had an envelope full of cash in his desk drawer. Todd looked for the envelope to give Christmas bonuses to his employees and noticed that most of the cash was missing. Margaret testified that $4,000 had been stolen. Todd thought the theft must have been "an inside job." The Toazes did not know who stole the money, but suspected Todd's

sister might have taken it because she had previously stolen money from their mother by using her credit card without her permission.

{¶5} The second theft occurred during the second week of February 2015. Todd testified that after the cash was stolen from the desk in his office, he moved the money to a dresser drawer in his bedroom. Around President's Day 2015, he noticed that all the change he kept in a gallon bucket hidden inside the cupboard of a hutch in his office had disappeared. This discovery prompted him to look for the cash in his dresser drawer, which was also missing. Todd and Margaret subsequently reported the thefts to the Walton Hills Police Department.

{¶6} Officer John Paulin ("Paulin") and Detective Sergeant David Kwiatkowski ("Kwiatkowski") installed a tattletale alarm system in the Toazes' home. Paulin testified that the tattletale alarm system is a wireless system of sensors that may either sound an alarm or remain silent when it senses movement. They installed numerous sensors in the Toazes' garage and kept the system silent so as not to alert any trespassers. (Tr. 82.)

{¶7} Paulin testified that on February 27, 2015, he received notification that the tattletale alarm in the Toazes' garage had been activated. He responded to the home and observed a gray Ford Taurus backing out of the driveway. Paulin stopped the vehicle and questioned the driver, who identified herself as Arnold. Arnold, who appeared nervous and in a hurry, informed Paulin that she was a cleaning lady and that she had come to inquire about cleaning the Toazes' home that day.

**{¶8}** Paulin learned from the Toazes that Margaret had specifically instructed Arnold not to come to the house that day, which happened to be a Thursday. Arnold had texted Margaret the day before and wanted to know if she could come and clean the Toazes' house on Thursday, February 26, 2015. Margaret told her that Thursday was not a good day to come and clean because Todd's mother had had a stroke, and their adult children were coming into town to say goodbye. Margaret further informed Arnold that she would contact Arnold the following week to schedule a date that worked with Margaret's "hours." There was no evidence as to whether Margaret was absent from the house on any regular schedule or whether she was even employed outside the home.

**{¶9}** Margaret testified that she preferred to have someone in the home when Arnold came to clean the house. Margaret's mother, Patricia O'Neill ("O'Neill"), was present when Arnold had cleaned the house in the past because she worked as a bookkeeper for Todd's excavating business on Tuesdays and Wednesdays.

**{¶10}** Margaret explained that Arnold had only cleaned the house twice before this incident, and that she had paid Arnold $100 both times, in twenty-dollar bills. She never paid Arnold with rolled coins. Yet, when Arnold's vehicle was searched incident to her arrest, Paulin discovered approximately $74 in rolled coins hidden under Arnold's seat. (Tr. 86.) Todd's account numbers were written on many of the rolls.

**{¶11}** Todd returned home upon learning that Arnold was arrested and discovered that most of his rolled coins were missing from a drawer in his office. He reported the loss to the police, who confirmed that the numbers observed on the rolls discovered in

Arnold's vehicle matched the account numbers written on the few remaining rolls of coins in Todd's office.

{¶12} Arnold testified in her own defense at trial. She admitted being at the Toazes' house at the time the silent tattletale alarm went off, but denied she stole the rolled coins. She told police she had come to the home to speak to Margaret about scheduling a time for her to come and clean the Toazes' house. According to Arnold, Margaret had previously paid her with rolled coins, and Arnold kept them locked in her car to prevent her son, who was addicted to heroin, from stealing them.

{¶13} After hearing all the evidence, the court found Arnold guilty of second-degree felony burglary, in violation of R.C. 2911.12(A)(2), and misdemeanor theft, in violation of R.C. 2913.02(A)(1). At sentencing, the court ordered Arnold to serve one year of community control sanctions. Arnold now appeals her convictions.

## II. Law and Analysis

{¶14} In the first assignment of error, Arnold argues there was insufficient evidence to support her burglary conviction. In the second assignment of error, Arnold argues her burglary conviction was against the manifest weight of the evidence. In both assigned errors, Arnold argues there was no evidence that it was objectively likely that a person was present or likely to be present at the time the burglary was committed. We discuss both assignments of error together because they involve the same factual issues.

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266,

2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶16}** In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶17}** Arnold was convicted of burglary in violation of R.C. 2911.12(A)(2), which states that "no person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."

**{¶18}** "A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." *State v. Green*, 18 Ohio App.3d 69, 72, 480 N.E.2d 1128 (10th Dist.1984). In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), the defendant's knowledge concerning habitation is not material. "'The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely.'" *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 20, quoting *State v. Palmer*, 8th Dist. Cuyahoga No. 89957, 2008-Ohio-2937, ¶ 13.

**{¶19}** "'[A]lthough the term 'likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty.'" *State v. Smith*, 8th Dist. Cuyahoga No. 91715, 2010-Ohio-1655, ¶ 25, quoting *State v. Frock*, 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254.

**{¶20}** The Ohio Supreme Court has held that the state can establish the "likely to be present" element of burglary under R.C. 2911.12(A)(2) by showing that the occupants of the dwelling were "in and out on the day in question" and were temporarily absent when the burglary occurred. *State v. Kirby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph one of the syllabus. By contrast, this court has held that "'where the occupants of a house are absent as part of their regular workday, they are not likely to be present during the day.'" *Richardson* at ¶ 22, quoting *State v. McCoy*, 10th Dist. Franklin No. 07AP-769, 2008-Ohio-3293, ¶ 23.

{¶21} There was no evidence that Margaret was regularly absent from their home as part of any typical workday. There was no evidence as to whether Margaret worked a regular schedule or if she was even employed outside the home. Moreover, Todd operated a business from inside the home that employed at least one employee in the home. In fact, Arnold testified at trial that she expected either Margaret or O'Neill to be present when she came to the Toazes' home on the day of the robbery. (Tr. 160.) Therefore, the court reasonably concluded that the state proved the "likely to be present" element of second-degree burglary offense beyond a reasonable doubt.

{¶22} Arnold asserts that the trial court failed to specifically make a finding on the "likely to be present" element when it rendered its verdict from the bench. She contends this omission indicates the court failed to find her guilty of the second-degree burglary offense charged in the indictment. However, Crim.R. 23(C), which governs guilty verdicts in bench trials, only requires the court to make a "general finding." Specific findings as to every element of the offense are not required under the rule. *State v. Rode*, 11th Dist. Portage No. 2010-P-0015, 2011-Ohio-2455, ¶ 31 (the trial court did not err by allegedly failing to determine whether defendant acted "knowingly" as required by statute where, because defendant did not reference any authority requiring the trial court in its guilty finding to make specific findings regarding each element of the offense and the record supported such a finding); *see also State v. Walker*, 26 Ohio App.3d 29, 498 N.E.2d 191 (8th Dist.1985)(when defendant makes a knowing, intelligent, and voluntary waiver of his right to a jury trial, Crim.R. 23(C) only requires the court to make a general

finding and the failure to make specific findings does not violate defendant's right to due process).

**{¶23}** Accordingly, both of Arnold's assignments of error are overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR