[Cite as *State v. Henderson*, 2017-Ohio-2900.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-16-012

      Appellee                              Trial Court No. 2014CR0224

v.

James Henderson                          **DECISION AND JUDGMENT**

      Appellant                              Decided: May 19, 2017

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**JENSEN, P.J.**

## I. Introduction

{¶ 1} Appellant, James Henderson, appeals the judgment of the Wood County

Court of Common Pleas, finding him guilty of murder, felonious assault, and

endangering children, and imposing a prison sentence of 15 years to life.

## A. Facts and Procedural Background

{¶ 2} On June 5, 2014, appellant was indicted on one count of murder in violation of R.C. 2903.02(B) and (D), and R.C. 2929.02(A), an unspecified felony, one count of endangering children in violation of R.C. 2919.22(B)(2) and (E)(3), a felony of the second degree, one count of endangering children in violation of R.C. 2919.22(B)(2) and (E)(3), a felony of the third degree, and one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree. According to the indictment, the felony murder count was predicated upon appellant's commission of "an offense of violence that is a felony of the first or second degree, to wit: Endangering Children or Felonious Assault."

{¶ 3} Appellant appeared before the trial court for arraignment on June 17, 2014, at which time he entered a plea of not guilty to the charges contained in the indictment. Following several pretrial conferences and the completion of discovery, appellant entered a waiver of his right to have the matter tried before a jury. Consequently, a bench trial commenced on January 6, 2016.

{¶ 4} At trial, the following facts were elicited: On May 17, 2014, authorities were alerted that appellant's three-month-old son, B.H., was not breathing. According to statements appellant made to Sergeant Jeremy Holland of the Wood County Sheriff's Department, B.H. woke up around 7:00 a.m. that morning and drank three or four ounces of formula. Appellant was the only one home with B.H. at the time. Afterwards, appellant laid B.H. down in his crib. Appellant then went back to bed. Appellant woke

2.

up sometime later in the afternoon, and noticed that B.H. had vomited. Consequently, appellant picked B.H. up out of his crib and noticed that he was stiff. Appellant then alerted B.H.'s maternal grandmother, S.S., to B.H.'s condition, at which point S.S. called 911 and commenced CPR.

{¶ 5} Jerry Houtz was the first EMT to arrive on the scene after authorities were notified of B.H.'s condition. Upon arrival, Houtz was greeted by appellant, at which point Houtz entered the residence and noticed that CPR had already been started by S.S. Houtz subsequently took over for S.S., and immediately noticed that B.H. was "extremely cold, gray, getting stiff." Houtz also noticed that B.H. had aspirated and that vomitus was present on B.H.'s mouth and nose. B.H. had no pulse at this point.

{¶ 6} Houtz proceeded to take B.H. outside the residence, where he would be closer to the ambulance that was on its way. Houtz testified that appellant did not follow him outside or travel to the emergency room with B.H. During the ambulance transport to the emergency room, B.H. was intubated and CPR was resumed. Michael Cox was the paramedic that performed the intubation. Cox echoed Houtz's testimony in describing B.H.'s appearance as "cool and stiff." Ultimately, the paramedics' efforts to resuscitate B.H. during the 17-minute ride to the emergency room were futile.

{¶ 7} After B.H. arrived at the hospital, emergency room nurse, Amanda Michaels, began treating him. Michaels testified that the first thing she noticed about B.H.'s condition was that he felt very cold and stiff. Another nurse, Kristy Weiker, described B.H. as "cold and lifeless." Michaels took B.H.'s rectal temperature, which

3.

was 86 degrees Fahrenheit upon admission. Upon further examination, Michaels noticed that B.H. had a bruise on his forehead and blood in his right eye. The emergency room physician, James Case, testified that B.H.'s stiffness and body temperature were indicators that B.H. "had been down for likely hours." He observed a subconjunctival hemorrhage on B.H.'s right eye, which he stated was typically associated with trauma.

{¶ 8} After working on B.H. for half an hour without a change in his condition, Case made the decision to cease resuscitation efforts. According to Weiker, the hospital staff "kind of all knew that there was not going to be any return to life for the child. Just from experience with the temperature that he was and how stiff he was and how many, you know, codes we've been in in the past, it kind of was pretty apparent that he wasn't going to be living at the end of the code situation."

{¶ 9} Following B.H.'s death, an autopsy was performed in order to determine the cause of death. According to the deputy coroner that performed the autopsy, Cynthia Beisser, 20 milliliters of blood was pooled in the occipital region of B.H.'s skull and a retinal hemorrhage was observed, indicating that a head injury had occurred prior to his death. Beisser testified that the injuries she observed were consistent with a "whiplash type of injury." Thus, Beisser indicated that the cause of B.H.'s death was abusive head trauma. Homicide was listed as the manner of death. Notably, a search of appellant's social media profiles revealed that appellant had conducted numerous computer searches

4.

for the term "shaking [sic] baby syndrome" between May 10, 2014, and May 17, 2014, the day B.H. died.[1]

{¶ 10} At the conclusion of the state's case-in-chief, appellant moved for acquittal under Crim.R. 29, which the trial court denied. Appellant did not present any evidence.

{¶ 11} Following closing arguments, the court found appellant guilty of one count of endangering children (pertaining to the May 17, 2014 incident), one count of felonious assault, and one count of murder. The court found appellant not guilty of the remaining endangering children count (pertaining to the May 10, 2014 incident). Concerning the felony murder charge, the court stated:

> As to Count One, the Court finds on or about May 17, 2014, in Wood County, Ohio, the defendant caused the death of [B.H.] As a proximate result of committing or attempting to commit an offense of violence, that is a felony of the second degree, to wit, endangering children, finding that the defendant committed or attempted to commit the offense and that the defendant recklessly tortured or cruelly abused a child that resulted in serious physical harm to [B.H.] So the Court will make a finding of guilty to Count One, murder.

---

[1] May 10 was significant because B.H. suffered a bruise to his forehead on that date while under appellant's care. According to appellant, B.H. was injured when he lunged out of appellant's arms and hit his head on a metal bed frame. Appellant was charged with one count of endangering children as a result of the injury sustained on May 10, but the trial court found him not guilty on that charge.

5.

**{¶ 12}** Upon its finding of guilt as to the aforementioned charges, the court ordered the preparation of a presentence investigation report and continued the matter for sentencing. The court directed the parties to be prepared to address the issue of merger at sentencing, and to submit memoranda on that issue at least one week prior to the sentencing hearing. In so doing, the court stated that there was "a very strong possibility that all or at least a significant number of these charges may merge for purposes of sentencing, and that is something that we will consider at the time of sentencing."

**{¶ 13}** At sentencing, the state argued that the offenses for which appellant was found guilty should not merge but, rather, that the trial court should impose a sentence as to each offense and order the sentences to be served concurrently. Appellant disagreed, insisting that the offenses should merge because they each relate to a single offense. Upon consideration of these arguments, the trial court ordered appellant to serve 15 years to life in prison for the murder charge, plus 5 years in prison on each of the remaining offenses (endangering children and felonious assault). Adopting the state's merger argument, the trial court ordered the sentences to be served concurrently to one another.

## B. Assignments of Error

**{¶ 14}** Following the trial court's imposition of sentence, appellant filed a timely appeal. On appeal, appellant presents the following assignments of error for our review:

First Assignment of Error: The court erred when it did not merge Appellant's convictions for Child Endangerment and Murder for purposes of sentencing.

6.

Second Assignment of Error: Appellant's conviction for felonious assault was against the manifest weight of the evidence.

Third Assignment of Error: The court erred to the prejudice of Appellant when it did not consider the lesser included offense of involuntary manslaughter.

{¶ 15} For ease of discussion, we will address appellant's assignments of error out of order.

## II. Analysis

### A. Manifest Weight of the Evidence

{¶ 16} In his second assignment of error, appellant argues that his felonious assault conviction was against the manifest weight of the evidence.

{¶ 17} In a bench trial, the trial court assumes the fact-finding function of the jury. Thus, when reviewing a manifest weight claim,

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} It has been long held that the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to decide. *State v. Thomas*, 70

7.

Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982). The standard of review is therefore high, and the trial court, with its unique position to resolve the factual issues, enjoys significant deference to determine the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992). As such, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 19} Under R.C. 2903.11,

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> * * *
>
> (D)(1)(a) Whoever violates this section is guilty of felonious

assault.

{¶ 20} Here, appellant argues that the state's evidence fails to establish the mens rea element of felonious assault; that is, the state failed to demonstrate that appellant *knowingly* caused serious physical harm to B.H. Under R.C. 2901.22(B), a person acts knowingly when the person is aware that his conduct "will probably cause a certain result or will probably be of a certain nature."

{¶ 21} In order to establish appellant's awareness of the consequences of his violent behavior toward B.H., the state presented evidence of appellant's numerous internet searches of "shaking [sic] baby syndrome" during the days and hours leading up to B.H.'s death. Appellant contends that these searches did not establish his knowledge

of the consequences of his actions, but were simply the product of appellant's guilty conscience for the injuries B.H. sustained when he lunged out of appellant's arms and hit his head on a bed frame one week prior to his death. However, appellant's position is discredited by his acknowledgement that the injuries B.H. sustained during that fall were "not fatal, or even serious."

{¶ 22} Further, appellant urges this court to find that the sheer number of internet searches (approximately 200) demonstrates that appellant did not understand the consequences of his actions and demonstrated his recklessness rather than knowledge. Notably, appellant presented no evidence at trial to establish the basis for his extensive internet research on the subject of shaken baby syndrome. Moreover, appellant concedes that his version of the events that transpired on May 17, 2014, was inconsistent with the injuries B.H. sustained. When questioned by law enforcement personnel as to what happened to B.H., appellant suggested that he may have injured B.H. by holding him too tightly or throwing him up in the air and letting him fall on the bed. Additionally, appellant informed the authorities that he shakes when he gets angry and acknowledged that he was angry with B.H. on the morning of May 17, 2014. However, Beisser testified at trial that such actions could not have resulted in the "devastating" brain trauma she observed while performing B.H.'s autopsy.

{¶ 23} In light of the evidence presented at trial, including the autopsy findings of devastating brain trauma and appellant's peculiar interest in shaken baby syndrome, we

find that this is not the exceptional case in which the evidence weighs heavily against appellant's conviction for felonious assault.

{¶ 24} Accordingly, we find appellant's second assignment of error not well-taken.

## B. Lesser Included Offenses

{¶ 25} In his third assignment of error, appellant argues that the trial court erred when it did not consider the lesser included offense of involuntary manslaughter.

{¶ 26} A charge on a lesser included offense is required where the trier of fact could reasonably find against the state and for the accused on one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense. *State v. Kilby*, 50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336 (1977). In other words, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required, but is also improper.

{¶ 27} Here, appellant argues that he could have reasonably been convicted of involuntary manslaughter rather than felony murder. He contends that the lesser included

10.

offense of involuntary manslaughter should have been considered because his internet searches did not establish that he knowingly caused serious physical harm to B.H. In essence, appellant is once again challenging the veracity of the state's evidence as to the establishment of the requisite mens rea to support his conviction for felonious assault. Notably, the trial court did not rely upon appellant's conviction for felonious assault to support its finding of guilt on the felony murder charge. Rather, the court indicated at the conclusion of the trial that the predicate offense for the felony murder conviction was the endangering children count. Therefore, appellant's argument is misplaced. Additionally, we find that the evidence clearly supported a finding that appellant acted knowingly when he assaulted B.H., for the reasons stated in our analysis of appellant's second assignment of error.

{¶ 28} Moreover, appellant waived his right to a jury trial and thus this case was tried to the bench. In a bench trial, the court is presumed to know the law and have considered any lesser offenses that are supported by the evidence. *State v. Buckley*, 8th Dist. Cuyahoga No. 68419, 1995 Ohio App. LEXIS 5181 (Nov. 22, 1995); *In re Z.C.*, 12th Dist. Warren Nos. CA2005-06-065, CA2005-06-066, CA2005-06-081, CA2005-06-082, 2006-Ohio-1787, ¶ 30-31. "Furthermore, the judge in a bench trial does not need to make a record of the fact that he considered lesser offenses and rejected them since Crim.R. 23(C) only requires the court to make a general finding of guilty or not guilty." *State v. Rister*, 6th Dist. Lucas No. L-09-1191, 2012-Ohio-516, ¶ 15, citing *State v.*

*Walker*, 26 Ohio App.3d 29, 31, 498 N.E.2d 191 (8th Dist.1985); *State v. Avery*, 12th Dist. Preble No. CA87-03-006, 1987 Ohio App. LEXIS 9691 (Nov. 23, 1987).

{¶ 29} Because the trial court was presumed to know the law and have considered the lesser included offense of involuntary manslaughter, and in light of our conclusion that the evidence did not reasonably support an acquittal on the felony murder count and a conviction on the lesser offense, we find appellant's third assignment of error not well-taken.

### C. Merger of Allied Offenses of Similar Import

{¶ 30} In his first assignment of error, appellant argues that the trial court erred when it failed to merge his conviction for endangering children with his conviction for felony murder.

{¶ 31} Regarding merger of allied offenses of similar import, R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus

12.

as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 32} As set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the test for whether offenses are allied offenses of similar import under R.C. 2941.25 is two-fold. First, the court must determine "whether it is possible to commit one offense and commit the other with the same conduct." *Id.* at ¶ 48. Second, the court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50.

{¶ 33} Recently, the Supreme Court of Ohio expounded upon its holding in *Johnson*, stating:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when a defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be

considered. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 34} We review the trial court's merger determination under R.C. 2941.25 de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 35} At the outset, we note that the trial court identified endangering children as the predicate offense for the felony murder conviction at the conclusion of the bench trial. The conduct that gave rise to the endangering children conviction and, by extension, the felony murder conviction, was specified by the court as follows: "[T]he defendant committed or attempted to commit the offense [of endangering children] and * * * the defendant recklessly tortured or cruelly abused a child that resulted in serious physical harm * * *. So the Court will make a finding of guilty to Count One, murder."

{¶ 36} Given the fact that the endangering children count was the predicate offense for appellant's murder conviction, we agree with appellant that the trial court erred in failing to merge the two offenses at sentencing. Indeed, the murder count was predicated upon the same conduct that gave rise to the endangering children conviction, appellant's abuse of B.H. that resulted in serious physical harm and, eventually, death. The offenses were of similar import, and appellant committed the offenses with one act and one animus.

{¶ 37} Accordingly, appellant's first assignment of error is well-taken. Consequently, we must remand this matter for resentencing.

14.

### III. Conclusion

{¶ 38} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed, in part, and reversed, in part, and this matter is remanded to the trial court for resentencing consistent with the requirements of R.C. 2941.25. Costs are assessed to appellee pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                  JUDGE
Thomas J. Osowik, J.

James D. Jensen, P.J.          _____
CONCUR.                                              JUDGE

_____
                                                  JUDGE