[Cite as *State v. Powell*, 2012-Ohio-5104.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO.    2012 CA 14

v.                               :          T.C. NO.    11CR206

CHRISTOPHER T. POWELL            :          (Criminal appeal from
                                            Common Pleas Court)

    Defendant-Appellant         :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   2nd   day of    November   , 2012.

. . . . . . . . . .

NICK A. SELVAGGIO, Atty. Reg. No. 0055607, Prosecuting Attorney, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

DARRELL L. HECKMAN, Atty. Reg. No. 0002389, One Monument Square, Suite 200, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**    After the trial court overruled his motion to suppress, Christopher T. Powell

pled no contest to illegal cultivation of marijuana, a third degree felony, and possession of criminal tools, a fifth degree felony. As part of his plea, the State agreed to dismiss three additional charges. The trial court found him guilty and sentenced him to three years of community control, fines totaling $5,000, and a six-month driver's license suspension. Powell's sentence was stayed pending appeal.

{¶ 2} Powell appeals from the denial of his motion to suppress. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3} Detective Scott Curnutte and Deputy Rick Jordan, both of Champaign County Sheriff's Office, testified for the State at the suppression hearing. Their testimony, which the trial court found to be credible, established the following facts.

{¶ 4} At approximately 4:00 a.m. on October 3, 2010, Detective Curnutte was contacted at home regarding a tip that marijuana was being dried in the detached garage at Powell's residence, which was located in a remote area of Champaign County. Curnutte briefly looked up information about Powell and learned that Powell was the occupant of the identified residence; Powell had no prior criminal record. Because Curnutte believed that drugs often are moved quickly, he decided that the tip should be investigated immediately.

{¶ 5} At approximately 5:15 a.m., Detective Curnutte, in plain clothes, went to Powell's single-story residence to investigate the tip. Curnutte was accompanied by four or five other detectives and deputies; one of the deputies was in uniform, while the other officers were in plain clothes. A total of four vehicles, including two cruisers, drove to Powell's home.

{¶ 6}    Curnutte and a uniformed deputy knocked on Powell's door. After a few minutes, Powell answered; it was apparent to the officers that Powell had been asleep. Curnutte explained to Powell that there was a complaint regarding marijuana growing or drying in the residence and that he wanted to come in to speak with him. Powell let all of the officers enter. Curnutte told Powell that the main complaint concerned an unattached garage, and said that the officers needed to check it out. Curnutte could smell a strong odor of marijuana smoke in the residence.

{¶ 7}    Detective Curnutte and Deputy Jordan (also in plain clothes) went with Powell into the kitchen area, leaving the other three or four officers in the front room area. Curnutte pulled out a consent to search form and completed it. Curnutte testified, "I recall setting it down on * * * the kitchen counter, and explained it to him, read it to him, told him what we were going to search, what we were searching for. I didn't read the words. I set it down for his signature." Curnutte further stated that he told Powell that the officers "needed to check in the garage and depending on what we found out in the garage, would depend on whether or not we needed to search the rest of the residence." Curnutte did not recall Powell's asking what would happen if he did not sign the consent form. Powell signed the consent form, Curnutte signed it next, and Jordan signed as a witness. The detective stated that Powell was cooperative and did not express any limitations on the officers' ability to search.

{¶ 8}    After Powell signed the written consent form, Detective Curnutte, Powell, and several deputies went into the unattached garage. Curnutte observed what he believed was an "old grow room" and some old marijuana shake leaves. Curnutte then told Powell, "[L]et's just check the back of the property real quick * * * to make sure everything is

okay." They walked to the rear of the property. Curnutte did not observe anything on the back porch. However, when he shined his flashlight at a rear window near the corner of the house, Curnutte saw marijuana inside, hanging upside down and drying. Curnutte pointed it out to Powell and said, "We got to go in and get that." Powell indicated that he understood.

{¶ 9} Powell and Detective Curnutte went inside through the front door. As the marijuana was located in the master bathroom, Curnutte asked Powell to wake his girlfriend, Betsy Dunlap, who was sleeping in the master bedroom, and have her come out. Powell and Dunlap sat on the living room couch as the officers retrieved the marijuana and processed the scene. The officers recovered 18 marijuana plants, a starter seed tray, razor blades, pH Up, a digital scale, and several plastic bags of marijuana from inside the house. Two marijuana plants were removed from the northwest corner of the property.

{¶ 10} Powell and Dunlap also testified at the suppression hearing. Powell testified that he was awakened around 5:00 a.m. by pounding on his front door. He looked outside and saw three or four people in plain clothes walking around with flashlights, and he believed that someone might be trying to break into his home. Powell grabbed his gun and told Dunlap to stay in bed while he investigated the situation. When Powell started to open the door, deputies shined their flashlights into Powell's face and identified themselves as Champaign County sheriff deputies.

{¶ 11} Powell testified that he talked with Detective Curnutte, who asked for permission to search the garage. Powell responded to Curnutte's request by asking, "If I say no, what do you do?" The detective told Powell, "We got probable cause. We are going to search anyways." Powell believed that any refusal to allow the search would be pointless.

Powell testified that Curnutte then told him that it would look good for the prosecutor if he (Powell) cooperated. At that juncture, Powell signed the consent form. Powell believed he was only permitting a search of the garage; he stated that he was frightened and did not read the form before signing it. Powell testified that Curnutte did not review the consent form with him. Dunlap corroborated portions of Powell's testimony.

{¶ 12} In September 2011, Powell was indicted for illegal cultivation of marijuana, possession of marijuana, and three counts of possession of criminal tools. He moved to suppress the evidence against him, arguing that the deputies' search of his residence was unlawful and without his valid consent. After a hearing, the trial court overruled his motion to suppress, concluding that Powell had voluntarily consented to the search. Powell subsequently pled no contest to illegal cultivation of marijuana and possession of criminal tools, and he was sentenced accordingly.

{¶ 13} Powell raises two assignments of error on appeal, which we address together.

II.

{¶ 14} In his assignments of error, Powell claims that the trial court erred in denying his motion to suppress under the federal and Ohio Constitutions and Ohio law related to voluntariness. He claims that he did not voluntarily consent to the search of his residence because (1) he knew the search would be prejudicial to him, (2) he was not informed that he had the right not to consent, (3) the search occurred during nighttime hours, (4) he did not have legal advice prior to giving consent, (5) there was an overwhelming police presence, and (6) he had no criminal record or prior experience with the criminal

justice process.

**{¶ 15}** When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham,* 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing the trial court's decision on the motion to suppress, an appellate court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence. *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, ¶ 6. The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

**{¶ 16}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressly*, 2d Dist. Montgomery No. 24852, 2012-Ohio-4083, ¶ 18. "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions.'" *State v. Hilton*, 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

**{¶ 17}** One of the specifically established exceptions to the warrant requirement is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Posey*, 40 Ohio St.3d 420, 427, 534

N.E.2d 61 (1988). The State is required to establish, by clear and convincing evidence, that consent to the search was freely and voluntarily given. *Posey* at 427; *State v. Connors-Camp,* 2d Dist. Montgomery No. 20850, 2006-Ohio-409, at ¶ 29. "'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth* at 227.

{¶ 18} In denying Powell's motion, the trial court noted that the officers' testimony and Powell's testimony were "markedly conflicting," and it expressly found that the officers' testimony was more credible. The court specifically found as follows:

> The Court finds that officers were identified as such upon Defendant's opening the door, and that the purpose of the officers' presence was made known. The Court finds that the officers explained the consent to search form to Defendant prior to Defendant's signing the form. The consent form states that Defendant was advised and fully understood he had the right to refuse to give his consent to search. Even though Defendant testified that he did not read the form, again, the Court finds that the form was explained to him (although perhaps not verbatim). The Court finds that the consent was given and the form signed prior to the officers' search of the premises.
>
> * * * The Court finds that Defendant signed the consent to search

form after the form was explained to him. See Exhibit 1 (consent to search form). The Court finds that the consent to search form demonstrates that consent was given to search the "residence including un-attached garage". Ex. 1.

{¶ 19} Applying the facts to the applicable law, the trial court concluded that Powell consented to the search of his property and that, under the totality of the circumstances, his consent was voluntary. The court found that "the actions taken by the police in this case do not amount to unlawful coercive behavior or otherwise taint Defendant's consent, that Defendant's will was not overcome, and that Defendant's consent was voluntary."

{¶ 20} As stated above, the trial court was in the best position to assess the witnesses' credibility, and the court's factual findings are supported by the record. Although the trial court could have reasonably credited Powell's testimony, the court chose to believe the version of events described by Curnutte and Jordan. The trial court expressly found that the consent to search form was explained to Powell prior to his signing the form and prior to any search being conducted. There is no evidence that the deputies displayed any weapons or engaged in any conduct toward Powell that overcame his will. Given the court's factual findings about what happened, we cannot conclude that Powell's consent was coerced based solely on the time of day, the fact that Powell had been asleep, his lack of experience with law enforcement officers, and the number of officers present. The State demonstrated by clear and convincing evidence that Powell's consent was voluntary and not coerced.

{¶ 21}     Powell's assignments of error are overruled.

III.

{¶ 22}     The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Nick A. Selvaggio
Darrell L. Heckman
Hon. Roger B. Wilson