[Cite as *State v. Lynch*, 2018-Ohio-1424.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27620 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-1195 |
| | : | |
| DSHAWN Z. LYNCH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 13th day of April, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, DShawn Lynch, appeals from his convictions for one count of aggravated possession of fentanyl; one count of murder, plus a firearm specification; one count of having a weapon while under disability; one count of trafficking in a counterfeit controlled substance; and one count of intimidation of a party official, public servant or witness. Raising three assignments of error, Lynch contends that the trial court erred by finding him guilty of murder contrary to the manifest weight of the evidence, that his defense counsel failed to provide effective assistance, and that the trial court committed plain error by convicting him of murder instead of involuntary manslaughter. We find that the trial court did not err and that Lynch's defense counsel provided adequate representation, and therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} In the early morning hours of April 15, 2016, Thomas Johnson and Joshua Wilson contacted Lynch by telephone to make arrangements to purchase 50 dollars' worth of crack cocaine and 50 dollars' worth of heroin. Tr. of Proceedings 113:24-117:10. Lynch was in Trotwood at the time with Subrina Jackson and Caitlynn Roman, in Jackson and Roman's apartment. *Id.* at 204:14-204:19 and 263:25-264:6. At Lynch's request, Jackson agreed to deliver the drugs to Johnson and Wilson.[1] *Id.* at 206:4-206:15 and 264:12-265:18.

{¶ 3} Lynch allegedly believed that the two men owed him money, though he denied as much in his testimony at trial. *Id.* at 206:25-207:9, 264:15-265:6 and 420:3-

---

[1] By Lynch's account, Jackson asked to make the delivery. Tr. of Proceedings 427:12-429:10.

421:4. Regardless, the bag that Lynch gave Jackson to deliver contained crushed tablets of ibuprofen and penicillin, rather than crack cocaine and heroin.[2] *Id.* at 207:14-207:22 and 264:12-265:8. Lynch also gave Jackson a black handgun, which she put into her purse.[3] *See id.* at 210:2-210:8, 220:8-220:15 and 269:13-269:25.

**{¶ 4}** Travelling in Johnson's car, Johnson and Wilson met Jackson at a Speedway gas station, as Lynch had instructed them.[4] *Id.* at 119:19-122:18. With Jackson sitting in the rear seat, Johnson, Wilson and she drove across the street to complete their transaction. *Id.* at 132:4-135:13 and 214:14-217:5. Jackson gave the bag of crushed ibuprofen and penicillin tablets to Johnson and Wilson, and Wilson paid with a pre-paid debit card.[5] *Id.* at 117:13-118:16, 134:4-134:16 and 215:23-216:8.

**{¶ 5}** Having taken the card from Wilson, Jackson stepped out of the car. *Id.* at 135:2-135:18 and 217:1-217:13. Johnson and Wilson, in the meanwhile, sampled the contents of the bag and quickly discovered that they had been duped. *Id.* at 135:5-136:20. At that point, Jackson returned and stepped back into the car, telling Johnson and Wilson that Lynch insisted on payment in cash. *Id.* at 136:24-137:24 and 218:1-218:16. Although Johnson and Wilson protested that Lynch had agreed to accept the pre-paid debit card, once Jackson showed them her gun, they complied with her instruction to drive back to the Speedway. *Id.* at 137:11-138:21. Lynch and Roman

---

[2] Lynch testified otherwise. Tr. of Proceedings 427:12-428:21.

[3] Lynch denies that he gave a gun to Jackson. Tr. of Proceedings 429:23-430:20.

[4] At trial, Lynch testified that he "never told them to meet at Speedway." Tr. of Proceedings 454:18-454:22.

[5] Jackson testified that Wilson gave her a "gift card," though Wilson described it as a "pre-paid debit card." Tr. of Proceedings at 117:16-118:13 and 215:23-216:8.

arrived shortly afterward.   *Id.* at 141:4-141:13, 218:1-219:5 and 431:6-432:7.

**{¶ 6}** Jackson exited the vehicle when Lynch and Roman approached, giving her gun to Lynch as he positioned himself on the passenger's side, where Johnson was seated.[6]   *Id.* at 141:25-143:24 and 218:24-220:9.   Seeing the gun in Lynch's hand, Wilson became alarmed and started to drive away.   *Id.* at 144:16-146:12.   Lynch then fired a single shot, wounding Johnson.[7]   *Id.* at 144:16-146:23, 220:8-221:16 and 268:25-270:16.

**{¶ 7}** Knowing that Johnson was an Army veteran, Wilson took him to the nearby Dayton VA Medical Center for treatment.   *Id.* at 105:3-105:12, 146:18-147:1 and 149:1-149:8.   Wilson, however, "didn't stick around" because of an outstanding arrest warrant.   *Id.* at 149:16-150:8.   Johnson died from his wounds later in the day.   *Id.* at 83:6-83:14 and 87:10-90:2.

**{¶ 8}** Alerted to the shooting by hospital personnel, officers with the Dayton Police Department began an investigation.   *See id.* at 304:24-305:7.   The investigation led the officers to Wilson, who provided Lynch's cellular telephone number and identified Lynch in a photo lineup.   *Id.* at 305:20-308:6.   Acting on Wilson's information, the officers found Lynch that same evening at a house on Nicholas Road, in Dayton; Lynch had gone to the house apparently because his friend, Lavert Randle, was there.   *Id.* at 294:22-295:11, 310:7-311:3 and 314:18-316:3.   Randle, for his part, was at the house to babysit five of his cousins, the oldest of whom was 12.   *Id.* at 292:17-293:8.

---

[6] Lynch denies that Jackson handed him a gun.   Tr. of Proceedings 429:23-430:20 and 434:3-435:1.

[7] Lynch accuses Jackson of firing the shot.   Tr. of Proceedings 434:3-435:1.

{¶ 9} When police arrived, they recovered a black handgun from Randle's person. *Id.* at 314:18-315:23. At trial, Randle testified that the gun had dropped from Lynch's hip at some point after Lynch arrived, and he explained that he picked up the gun out of concern for his cousins' safety. *See id.* at 297:4-299:15. Subsequent forensic analysis established that the bullet which killed Johnson was fired from this gun. *Id.* at 381:19-385:14.

{¶ 10} On April 25, 2016, a Montgomery County grand jury issued an indictment charging Lynch with: Count 1, aggravated possession of fentanyl pursuant to R.C. 2925.11(A) and (C)(1)(a); and Count 2, possession of marijuana pursuant to R.C. 2925.11(A) and (C)(3)(a). The grand jury issued a reindictment one week later, charging Lynch with: Count 1, murder pursuant to R.C. 2903.02(B) and 2903.11(A)(1); Count 2, murder pursuant to R.C. 2903.02(B) and 2903.11(A)(2); Count 3, felonious assault pursuant to R.C. 2903.11(A)(1); Count 4, felonious assault pursuant to R.C. 2903.11(A)(2); Count 5, having a weapon while under disability pursuant to R.C. 2923.13(A)(4); Count 6, trafficking in a counterfeit controlled substance pursuant to R.C. 2925.37(B); and Count 7, intimidation of a witness pursuant to R.C. 2921.03. Lynch waived his right to a jury, and on May 9, 2017, the trial court found him guilty as charged on all counts.

{¶ 11} On May 31, 2017, the court docketed a termination entry, which it amended the following week.[8] The amended termination entry indicates (as does the original) that Count 2 of the first indictment merged with Count 1, and that Counts 1 through 4 of the

---

[8] The original termination entry incorrectly indicated that Lynch had been tried by a jury and included an erroneous advisement about postrelease supervision. *See* Tr. of Proceedings 512:2-512:16.

reindictment merged together, with the State electing to proceed on Count 1. In total, the court sentenced Lynch to a term of imprisonment lasting 21 years to life. Lynch timely filed his notice of appeal on June 12, 2017.

## II. Analysis

{¶ 12} For his first assignment of error, Lynch contends that:

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ENTERING A VERDICT CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Specifically, Lynch challenges the trial court's verdicts on the charges of murder, arguing that the court "clearly lost its way." Appellant's Br. 15. He characterizes the testimony of Jackson, Roman and Wilson as lacking credibility, and he faults the court for disregarding his "plausible" account of the events of April 15, 2016. *Id.* at 16-17.

{¶ 14} To evaluate a claim that a verdict is against the manifest weight of the evidence, an "appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 5, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Although an appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation

omitted.) *Id.* A conviction "should be reversed as being against the manifest weight of the evidence only in exceptional circumstances." (Citation omitted.) *Id.*

{¶ 15} Lynch argues that Wilson, "a desperate addict" with "three prior felony convictions," should not have been deemed a credible witness, and he claims that Wilson "only speculat[ed]" that he fired the shot which killed Johnson. Appellant's Br. 16. He questions Jackson's credibility because she "had been using Xanax bars and drinking heavily for many hours" in advance of the shooting, and because "she was given immunity" and "admitted knowingly selling [Johnson] and Wilson [counterfeit] drugs." *Id.* Similarly, he discounts the reliability of Roman because she was "high from prolonged drug and alcohol use" during the shooting, because "she totally changed her testimony" after receiving immunity, and because police officers implied that they would help her regain "custody * * * of her child if she [were to] help [the] prosecution." *Id.*

{¶ 16} At trial, Wilson acknowledged that he has "struggl[ed] with an addiction to opiates," indicated that he is seeking treatment, and admitted that he has a criminal record. Tr. of Proceedings 106:9-106:17, 107:16-107:22 and 167:25-168:2. The trial court apparently perceived Wilson's candor as indicative of credibility, and Lynch has not provided any evidence suggesting that the court misplaced its trust. *See, e.g., State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 156-157 (noting that the trier of fact is free to believe any, all or none of a witness's testimony and that "an appellate court may not substitute its judgment * * * unless it is manifestly clear that the fact-finder lost its way"); *State v. McDougald*, 4th Dist. Scioto No. 07 CA 3157, 2008-Ohio-1398, ¶ 8-10 (rejecting the argument that the testimony of an addict or convicted felon should be discounted out of hand). With respect to the shooting, Wilson testified as follows:

THE STATE: Who had the pistol? Where did you see it?

WILSON: [Lynch] at [that] time.

THE STATE: Okay. Is this the same gun that you saw, or similar gun that you saw earlier [in Jackson's possession]?

WILSON: Similar.

THE STATE: Okay. Was it the same color?

WILSON: Same color.

THE STATE: Okay. Black?

WILSON: Yes.

THE STATE: Al[right]. And did you ever see [Jackson] hand it to [Lynch]?

WILSON: No. I did not see that.

THE STATE: Al[right]. But now you're saying you saw a gun in [Lynch]'s hand?

WILSON: Correct.

* * *

THE STATE: [Could] you even [have] see[n] [Jackson] at that point? [Could] you see her?

WILSON: I [could] see her, yes.

THE STATE: Okay. What [was] she doing, if you know?

WILSON: She had actually had her back turned to me at that point.

THE STATE: Okay. And now are you 100 percent sure that [Lynch] had a gun?

WILSON: Yes.

* * *

WILSON: I could see it in [Lynch's] right hand. He had actually not had it pointed at either of us [i.e., Johnson and Wilson himself] yet, but I didn't want to take a chance of that happening.

* * *

THE STATE: Al[right]. Now, who [did] you see out there with a gun at this point?

WILSON: Just [Lynch].

THE STATE: Okay. Just him? Anybody else have a weapon that you [saw]? You've got to answer out loud.

WILSON: No.

THE STATE: Okay. What happen[ed] [next]?

WILSON: I put the car in drive and tried to take off before allowing him in[to] the vehicle.

* * *

THE STATE: Okay. And what happen[ed]?

WILSON: I hear[d] a gunshot. It took—ring [sic], real loud ringing in my ears. * * *.

*Id.* at 143:11-143:24, 144:12-144:18, 145:1-145:3, 146:4-146:12 and 146:15-146:17. Wilson's assertion that Lynch shot Johnson, as the transcript illustrates, consists of more than mere speculation. Lynch had a gun in his hand in the moment before the shot rang out, and based on his position relative to Wilson and Johnson, Lynch was the only person

who could have fired the shot, though Wilson did not see him pull the trigger.[9]

{¶ 17} Lynch argues that the testimony given by Jackson and Roman should be viewed with suspicion because they were under the influence during the shooting, because they received immunity, and because their testimony at trial was partly inconsistent with their earlier statements to police officers. Appellant's Br. 16. Yet, the trial court was apprised of these concerns, and it presumably accounted for them as part of its evaluation of Jackson and Roman's credibility. *State v. Spraggins*, 8th Dist. Cuyahoga No. 85686, 2005-Ohio-5977, ¶ 13-14; Tr. of Proceedings 233:4-237:21 and 279:16-284:11. Moreover, Wilson corroborated Jackson and Roman's description of the shooting itself, and forensic testing demonstrated that the gun recovered during Lynch's arrest fired the bullet that killed Johnson. Tr. of Proceedings 142:4-146:17, 220:8-221:19, 268:5-270:20 and 381:19-385:14.

{¶ 18} On a challenge directed to the weight of the evidence, we may not simply substitute our judgment for that of the trial court, particularly with respect to the court's assessment of the credibility of witnesses. We find that Lynch has not demonstrated that the trial court clearly lost its way, and therefore, his first assignment of error is overruled.

{¶ 19} For his second assignment of error, Lynch contends that:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF

---

[9] On cross-examination, Wilson acknowledged that he initially told police officers that he had seen Lynch with a silver handgun, and Lynch himself claims that he had a silver handgun on his person during the shooting. Tr. of Proceedings 185:11-187:2, 346:8-346:10, 429:23-430:6 and 431:20-432:7. Even so, Wilson's trial testimony was corroborated by that of Jackson and Roman, and the combined testimony of these three witnesses all but precludes the possibility that a person other than Lynch was in the right position at the critical time to fire the shot that killed Johnson. *See also id.* at 85:12-90:11 (pathologist describing the path of the bullet through Johnson's body).

COUNSEL BECAUSE HIS TRIAL ATTORNEY FAILED TO ARGUE OR TO ASK THE TRIAL COURT TO CHARGE ITSELF WITH CONSIDERING THE OFFENSE OF INVOLUNTARY MANSLAUGHTER.

{¶ 20} Again directing his argument strictly to his conviction for murder, Lynch claims that his defense counsel "was ineffective [for] fail[ing] to raise the issue of [his] conduct being a violation of the crime of involuntary manslaughter, which it[] arguably was." Appellant's Br. 18. He posits that the testimony adduced at his trial "[es]tablishes that [he] discharged a firearm at or toward a motor vehicle[,] [rather than] at a person," meaning that he should not have been charged with felonious assault and, by extension, that he should not have been charged with murder under R.C. 2903.02(B). *Id.* at 21.

{¶ 21} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland*, 466 U.S. at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland*, 466 U.S. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.*

at 694. A failure "to make either showing defeats" the claim. *Cardenas*, 2016-Ohio-5537, ¶ 38.

{¶ 22} The "question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, citing *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. In the first part of this analysis, a court "determine[s] whether [an] offense is generally a lesser included offense" relative to a given criminal charge. *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 31 (1987). In the second part, the court determines whether the fact-finder "could reasonably find the defendant not guilty of the charged offense, but could [find] the defendant [guilty] of the lesser included offense." *City of Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 23. If the fact-finder could find the defendant guilty of the lesser included offense, then an instruction on that offense is required. *Miller*, 2013-Ohio-5621, ¶ 24, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192. Involuntary manslaughter "is a lesser included offense of aggravated murder with prior calculation and design[] [under] R.C. 2903.01(A), aggravated felony murder[] [under] R.C. 2903.01(B), and murder[] [under] R.C. 2903.02." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 78-79.

{¶ 23} Here, Lynch waived his right to a jury trial, and his case was tried to the bench. In a "bench trial, the court is presumed to know the law and [to] have considered any lesser offenses that [were] supported by the evidence." (Citations omitted.) *State v. Henderson*, 6th Dist. Wood No. WD-16-012, 2017-Ohio-2900, ¶ 28. Absent any

positive indication that the trial court did not consider finding Lynch guilty of involuntary manslaughter instead of murder, Lynch cannot demonstrate that he suffered prejudice as the result of his defense counsel's failure to argue the issue.[10]   Moreover, the evidence supported the court's verdicts on the charges of felonious assault, which in turn, supported the court's verdicts on the charges of murder.

{¶ 24} According to R.C. 2903.11(A)(1)-(2), "[n]o person shall knowingly" cause "serious physical harm to another or to another's unborn" or "cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."   Thus, the mens rea applicable to the offense of felonious assault is "knowingly."   R.C. 2901.22(B) states, in relevant part, that a "person acts knowingly, regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature."   (Emphasis added.)   Without an admission, proof "of an accused's purpose or specific intent invariably requires circumstantial evidence."   *State v. Mundy*, 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (2d Dist.1994).

{¶ 25} In his brief, Lynch contends that "[a]rguably, [he] shot at a car [which was] on a 'public road,' viz[.] the Speedway station," and "not at a person."   Appellant's Br. 21. Lynch knew, however, that the car was occupied by two persons when he fired his gun, and he fails to address the circumstances.   In the context of a dispute arising from the sale of illicit drugs, Lynch's contention that he simply wanted "to get the attention of [Johnson] and Wilson" strains credulity.   Appellant's Br. 21.

{¶ 26} Furthermore, if "felonious assault is the underlying offense that causes the

---

[10] Rather than a "failure" in the literal sense, this might have been a strategic decision on counsel's part.

death of [a person], [then] felony murder is the proper charge," and in such a case, a trial court does not err by refusing to charge a jury on involuntary manslaughter. *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 12; *see also*, *e.g.*, *State v. Tompkins*, 12th Dist. Butler No. CA2014-07-159, 2015-Ohio-2316, ¶ 14-19 (distinguishing between murder under R.C. 2903.02(B) and involuntary manslaughter); *State v. Lynch*, 8th Dist. Cuyahoga No. 84637, 2005-Ohio-3392, ¶ 30-31 (same). For all of the foregoing reasons, Lynch's second assignment of error is overruled.

{¶ 27} For his third assignment of error, Lynch argues that:

THE TRIAL COURT COMMITTED PLAIN ERROR BY FINDING APPELLANT GUILTY OF MURDER INSTEAD OF MANSLAUGHTER.

{¶ 28} In support of this assignment of error, Lynch opines that "the trial court should have noted that [he] committed only a misdemeanor and that it was error for defense counsel to fail to argue that, if anything, [he] was guilty of involuntary manslaughter for which the penalty is significantly less." Appellant's Br. 22. We have, however, already determined that the trial court properly found Lynch guilty of felonious assault, and consequently of murder, and that Lynch's defense counsel did not perform so deficiently as to cause Lynch prejudice. Lynch's third assignment of error is overruled.

### III. Conclusion

{¶ 29} We find that the trial court did not err by finding Lynch guilty as charged on all counts and that Lynch's defense counsel did not render ineffective assistance by failing to ask the court to consider finding Lynch guilty of involuntary manslaughter instead of murder under R.C. 2903.02(B). Therefore, Lynch's assignments of error are overruled,

and the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


DONOVAN, J. and FROELICH, J. concur.


Copies mailed to:

Mathias H. Heck, Jr.
Heather N. Jans
J. Allen Wilmes
Hon. Gregory F. Singer