[Cite as *State v. Rhodes*, 2020-Ohio-3479.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28431 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3525 |
| | : | |
| BROOKES RHODES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of June, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45432
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Brookes Rhodes, appeals from his convictions for felonious assault, having a weapon while under disability, tampering with evidence, and discharge of a firearm on or near prohibited premises. Raising three assignments of error, Rhodes argues that his convictions should be reversed because the trial court erred by overruling his motion to suppress the State's evidence against him; because the State's evidence on the charge of felonious assault was insufficient to support his conviction; and because he did not receive effective assistance of counsel at trial. We find that Rhodes's arguments lack merit, and his convictions are therefore affirmed.

## I. Facts and Procedural History

{¶ 2} Brittany Shanks, with whom Rhodes had had a child, visited Rhodes's residence in Dayton shortly after 2:00 a.m. on November 4, 2017; she arrived by car and had a passenger with her. *See* Transcript of Proceedings 137:6-138:15, 142:11-144:16 and 222:7-222:23; Appellant's Brief 5. Shanks entered Rhodes's residence, but after a short conversation with Rhodes, she exited. *See* Transcript of Proceedings 79:5-80:2, 153:21-156:23 and State's Trial Exhibits 2 and 4. Rhodes had installed a security video system in the residence, and the system recorded Shanks's arrival and the events that followed. *See id.*

{¶ 3} Once outside, Shanks retrieved a tire iron from the trunk of her car and used the tire iron to smash the passenger-side windows of Rhodes's car. *Id.* at State's Trial Exhibits 2 and 4. At the same time, Rhodes's security video system, which covered areas inside and outside the residence, recorded Rhodes loading a gun. *Id.* After Shanks returned to her car and seated herself in the driver's seat, Rhodes emerged from the residence with the loaded gun in his hand. *Id.*; *see* Appellant's Brief 5. Rhodes then

fired the gun at Shanks's car, while Shanks was still seated in the driver's seat. Transcript of Proceedings, State's Trial Exhibits 2 and 4; *see* Appellant's Brief 5. With his ammunition depleted, Rhodes hid the gun under a third car, which was parked behind the residence. *See* Transcript of Proceedings 225:2-226:5 and State's Trial Exhibits 2 and 4; Appellant's Brief 5.

{¶ 4} Shanks's passenger had fled when Rhodes began firing his gun, yet Shanks lingered, and when Rhodes reappeared at the front of the residence, he and Shanks began to argue. Transcript of Proceedings 225:2-225:10 and State's Trial Exhibits 2 and 4. In the midst of this argument, Shanks attempted to make a call with her cellular telephone, though Rhodes thwarted her by grabbing the phone and tossing it a considerable distance away. *See id.* at 226:4-226:21 and State's Trial Exhibits 2 and 4. Shanks responded by taking a jack from the trunk of her car, perhaps to defend herself or to attack Rhodes, but Rhodes punched her, seized the jack and struck her with it. *See* Transcript of Proceedings 226:15-227:11 and State's Trial Exhibits 2 and 4; Appellant's Brief 5. With Rhodes exhorting her to leave, Shanks returned to her car and tried unsuccessfully to start the engine, after which she departed on foot. *See* Transcript of Proceedings 227:18-228:1 and State's Trial Exhibits 2 and 4. Shanks's car caught fire several minutes later, apparently having been damaged by gunshots. *See* Transcript of Proceedings 230:24-231:20 and State's Trial Exhibits 2 and 4; Appellant's Brief 5.

{¶ 5} Officers with the Dayton Police Department arrived sometime afterward, although Rhodes initially refused to exit the residence. Transcript of Proceedings 39:2-40:1; *see* Appellant's Brief 5. Once Rhodes surrendered himself, he orally consented to a search and executed a form authorizing officers to "conduct a complete search of the

premises/vehicle [therein] described for firearms/evidence." *See* Transcript of Proceedings 40:2-42:25 and State's Hearing Exhibit 2;[1] Decision, Order and Entry Overruling Defendant's Motion to Suppress 2, Oct. 10, 2018. In a closet in Rhodes's bedroom, officers found a digital video recorder hidden in a shoebox. *See* Transcript of Proceedings 22:8-23:10 and 54:11-56:21; Appellant's Brief 5-6; Appellee's Brief 2-3. After procuring a search warrant for the contents of the recorder, officers discovered video of the fracas between Shanks and Rhodes. Transcript of Proceedings 56:17-58:2, 155:13-159:19 and State's Hearing Exhibit 3.

{¶ 6} On November 14, 2017, a Montgomery County grand jury issued an indictment charging Rhodes with: Count 1, felonious assault, a second-degree felony pursuant to R.C. 2903.11(A)(2) and (D)(1)(a); Count 2, having a weapon while under disability, a third-degree felony pursuant to R.C. 2923.13(A)(3) and (B); Count 3, tampering with evidence, a third-degree felony pursuant to R.C. 2921.12(A)(1) and (B); and Count 4, discharge of a firearm on or near prohibited premises, a third-degree felony pursuant to R.C. 2923.162(A)(3) and (C)(2). Count 1 and Count 4 each included a firearm specification pursuant to R.C. 2941.145.

{¶ 7} Rhodes filed a motion to suppress on January 16, 2018, in which he asked the trial court "to suppress any and all physical evidence obtained by law enforcement officers [because the] officers went beyond the [scope of his consent] to search." Defendant's Motion to Suppress 1, Jan. 16, 2018. The court overruled the motion in a

---

[1] The State introduced the form as Exhibit 2 during the hearing on the motion to suppress filed by Rhodes on January 16, 2018; the recordings made by Rhodes's security video system were introduced as State's Exhibits 2 and 4 during the bench trial held on May 14, 2019.

decision entered on October 10, 2018, and following a bench trial on May 14, 2019, the court found Rhodes guilty as charged.

{¶ 8} On May 30, 2019, the trial court sentenced Rhodes to serve two years in prison on Count 1; nine months in prison on each of Counts 2 through 4; and three years for the firearm specifications, which were merged for purposes of sentencing. The court ordered that Rhodes serve his sentences for Counts 2 through 4 concurrently to his sentence for Count 1, yielding an aggregate sentence of five years. Rhodes timely filed his notice of appeal on June 10, 2019.

## II. Analysis

{¶ 9} For his first assignment of error, Rhodes contends that:

THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO SUPPRESS THE REMOVAL AND SUBSEQUENT SEARCH OF THE DIGITAL VIDEO RECORDING[.]

{¶ 10} Rhodes argues that the trial court should have suppressed all evidence obtained by officers with the Dayton Police Department during their search of his residence because the officers exceeded the scope of his consent and because the officers improperly seized his digital video recorder before procuring a search warrant for the recorder's contents. *See* Appellant's Brief 7-8; *see also* Defendant's Motion to Suppress 2-3, Jan. 16, 2018; Defendant's Amended Memorandum in Support of Suppression 3-5, June 5, 2018. The State argues that Rhodes "did not limit the scope of his consent," and that the officers' seizure of his digital video recorder "was lawful under the plain view doctrine." Appellee's Brief 5.

{¶ 11} Appellate "review of a motion to suppress presents a mixed question of law

and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Accepting "these facts as true," assuming that they are properly supported, "the appellate court must then independently determine, without deference to the [legal] conclusion[s] of the trial court, whether the facts satisfy the applicable * * * standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 12} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At " 'the very core' " of the Fourth Amendment " 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Warrantless searches and seizures thus violate the Fourth Amendment unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions is the search of a residence "conducted with the consent of an owner or an occupier." (Citations omitted.) *State v. Holland*, 2019-Ohio-2351, 138 N.E.3d 658, ¶ 36 (2d Dist.).

{¶ 13} For a warrantless search based on consent to be deemed valid, however, the prosecution must "establish, by clear and convincing evidence, that consent * * * was freely and voluntarily given." (Citations omitted.) *State v. Powell*, 2d Dist. Champaign No. 2012-CA-14, 2012-Ohio-5104, ¶ 17. Whether consent was freely and voluntarily

given " 'is a question of fact to be determined from the totality of all the circumstances.' " *Id.*, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Ohio courts generally employ the following six factors to make this determination: (1) the "voluntariness of the defendant's custodial status" at the relevant time; (2) the use, if applicable, "of coercive police procedures"; (3) the extent "of the defendant's cooperation with the police"; (4) the "defendant's awareness of his right to refuse consent"; (5) the "defendant's education and intelligence"; and (6) the "defendant's belief that no incriminating evidence [would] be found." *State v. Webb*, 2d Dist. Montgomery No. 17676, 2000 WL 84658, *3 (Jan. 28, 2000), citing *United States v. Shabazz*, 993 F.2d 431, 438 (5th Cir.1993). No "single factor is dispositive." *Id.*, citing *Shabazz* at 431. In addition, "written consent is strong evidence of a defendant's willingness to allow a search," although if oral consent has been given, then written consent is not necessary. *Id.*, citing *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 24 (2d Dist.).

{¶ 14} Here, Rhodes orally consented to a search for "guns and evidence," and he executed a form authorizing "a complete search * * * for firearms/evidence." *See* Transcript of Proceedings 40:2-42:25, 45:6-46:12 and State's Hearing Exhibits 1-2. Rhodes maintains that his consent, though voluntary, was thereby limited to a search for firearms and evidence related to firearms because the phrases "guns and evidence" and "firearms/evidence" were too vague to enable an intelligent waiver of his Fourth Amendment rights with respect to evidence of any other kind.[2] *See* Appellant's Brief 7-

---

[2] Before the trial court, Rhodes also argued that he had not voluntarily consented to the search, but he has abandoned that argument on appeal, focusing instead on whether he intelligently consented to a search for evidence other than firearms and evidence related

8.

**{¶ 15}** We hold that the search of Rhodes's residence did not extend beyond the scope of his consent. Even assuming for sake of analysis that Rhodes believed he was consenting to a search only for firearms and evidence related to firearms, he consented to "a complete search" of his residence for such evidence, and his consent accordingly authorized the officers of the Dayton Police Department to search any container in which firearms, or evidence related to firearms, could be concealed. As a result, the officers were entitled to search the closet in Rhodes's bedroom, along with the shoeboxes in the closet. *See, e.g.*, *State v. Boling*, 2d Dist. Montgomery No. 25310, 2013-Ohio-4813, ¶ 22 (noting that the scope of a person's consent to a search includes any container that "could hold the object of [the] search").

**{¶ 16}** Regarding the seizure of Rhodes's digital video recorder, once the officers had lawfully opened the shoebox in which the recorder was hidden, they reasonably deduced that the recorder might contain evidence of the crimes they were investigating. *See* Transcript of Proceedings 54:11-56:21. Consequently, even if the phrases "guns and evidence" and "firearms/evidence" were impermissibly broad, as Rhodes argues, the officers were nevertheless permitted to seize the recorder, pursuant to the plain view doctrine, pending the issuance of a search warrant for its contents.[3] *See State v. Napier*,

---

to firearms. *Compare* Defendant's Motion to Suppress 2-3, *and* Defendant's Amended Memorandum in Support of Suppression 3, *with* Appellant's Brief 6-8.

[3] During oral arguments, Rhodes suggested that the seizure of the recorder was unlawful because the officers actually removed it from Rhodes's residence, rather than leaving it in place and securing the residence until they had obtained a search warrant for the data stored on it. The seizure of the recorder, however, was a less intrusive means of preserving evidence than securing the residence.

2d Dist. Montgomery No. 17326, 1999 WL 249174, *2-3 (Apr. 16, 1999) (upholding the seizure of illicit drugs found in a zipped gym bag in a closet during a search for computer disks associated with the illegal sale of alcohol); *State v. Shoults*, 12th Dist. Fayette No. CA2018-05-009, 2019-Ohio-1400, ¶ 32 (citing *Napier* with approval); *see also State v. Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162, ¶ 31-32 (1st Dist.) (holding that the warrantless seizure of evidence was permissible under the exigent circumstances exception to the Fourth Amendment where law enforcement officers took only that action which "was necessary to preserve the evidence, and no more"); *State v. Reilly*, 3d Dist. Seneca No. 13-19-28, 2020-Ohio-850, ¶ 22-23 (same). Moreover, Rhodes has not challenged the propriety of the search warrant itself, meaning that the question of whether the warrant was properly supported by probable cause is not before us. Rhodes's first assignment of error is overruled.

{¶ 17} For his second assignment of error, Rhodes contends that:

THE STATE PRESENTED INSUFFICIENT EVIDENCE TO PROVE EVERY ESSENTIAL ELEMENT OF EACH OF THE CHARGES BEYOND A REASONABLE DOUBT.

{¶ 18} Despite referring to all of the offenses for which he was convicted, Rhodes argues only that the State failed to present sufficient evidence to prove him guilty of felonious assault with a deadly weapon, a violation of R.C. 2903.11(A)(2). Appellant's Brief 8-9. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge

to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} R.C. 2903.11(A)(2) prohibits any "person [from] knowingly * * * [c]aus[ing] or attempt[ing] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Under R.C. 2901.22(B), a "person acts knowingly, * * *, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." The intended purpose of the person's conduct is irrelevant. *See State v. Robinson*, 2d Dist. Montgomery No. 28103, 2019-Ohio-2943, ¶ 49; *State v. Edwards*, 83 Ohio App.3d 357, 361, 614 N.E.2d 1123 (10th Dist.1992).

{¶ 20} In this case, the evidence showed that Rhodes fired a gun at Brittany Shanks's vehicle while Shanks and her passenger were seated within it. Transcript of Proceedings 224:17-225:20 and State's Trial Exhibits 2 and 4. Irrespective of his intentions, Rhodes was or should have been aware that by firing his gun, he could have caused physical harm to Shanks and her passenger; the trajectory of at least one of the rounds, in fact, suggested that it nearly struck Shanks. *See id.* at 225:4-225:20; *see also, e.g.*, *State v. Shoecraft*, 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 76 (observing that "it is reasonable to assume that [a person] who fires [several] shots from a gun into a * * * car with two occupants knows," or should know, "that there is a 'significant possibility' that [one or] more [of the occupants] could suffer physical harm as a result").

Rhodes claims that "no testimony or evidence was ever presented that showed any injury occurred or that [his actions posed] any risk of injury" to Shanks and her passenger, but Rhodes thus fails to account for the video recording in which he can be seen firing his gun at Shanks's vehicle. Appellant's Brief 9; Transcript of Proceedings 224:17-225:20 and State's Trial Exhibits 2 and 4.

{¶ 21} We find that the State presented sufficient evidence to prove that Rhodes was guilty of felonious assault with a deadly weapon, and with respect to the other offenses for which he was convicted, Rhodes has not met his burden to demonstrate that the State's evidence was insufficient. Rhodes's second assignment of error is overruled.

{¶ 22} For his third assignment of error, Rhodes contends that:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 23} Finally, Rhodes argues that his counsel rendered ineffective assistance "by failing to request [that] the [c]ourt consider [a]ggravated [a]assault" in violation of R.C. 2903.12 "as a lesser included offense" of felonious assault. Appellant's Brief 9. To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors

prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure to make either showing defeats the claim. *Cardenas* at ¶ 38.

{¶ 24} As the basis of his claim of ineffective assistance of counsel, Rhodes posits that as a matter of "common sense, * * * there is a 100% possibility [sic] that the trier of fact will not pick a[n] [option that] is not presented to [it]." Appellant's Brief 10-11. In other words, Rhodes suggests that because his defense counsel did not ask the trial court to consider whether he should be convicted of aggravated assault instead of felonious assault, there was no possibility of the court's convicting him of aggravated assault. *See* Appellant's Brief 10-11. Rhodes's argument, then, is that his counsel's omission of such a request is, of itself, sufficient to demonstrate a reasonable probability that the outcome of his trial would have been different. *See id.*

{¶ 25} In a bench trial, however, " 'the court is presumed to know the law and [to] have considered any lesser offenses that [were] supported by the evidence.' " *State v. Lynch*, 2d Dist. Montgomery No. 27620, 2018-Ohio-1424, ¶ 23, quoting *State v. Henderson*, 6th Dist. Wood No. WD-16-012, 2017-Ohio-2900, ¶ 28; *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 26-27. Absent any affirmative

demonstration that the trial court did not consider convicting Rhodes for aggravated assault instead of felonious assault, Rhodes cannot show that he suffered prejudice as a result of his defense counsel's omission, or failure, to request that the court do so. For that matter, the evidence was sufficient to support the court's verdict on the charge of felonious assault. Rhodes's third assignment of error is overruled.

### III. Conclusion

{¶ 26} We hold that the trial court did not err by overruling Rhodes's motion to suppress; that the State presented sufficient evidence to support Rhodes's conviction for felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2); and that Rhodes has not shown that his defense counsel rendered ineffective assistance. Therefore, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Chris Beck
Hon. Daniel T. Hogan, Visiting Judge